ALBRING *v.* WARD.

1. ADOPTION—HEIRSHIP.
   Heirship, except that based upon consanguinity, can be created only by a constitutional law by which relations of paternity and affiliation are recognized as legally existing between persons not so related by nature.

2. SAME—COMMON LAW.
   Heirship by adoption is unknown to the common law.

3. SAME—UNCONSTITUTIONAL STATUTE.
   Where a statute under which complainant was adopted was unconstitutional, and there was no contract between her and her foster parents to make complainant their heir, other than that arising from the adoption proceedings, she was not entitled to share in the real estate of which her foster father died seised.

4. WITNESSES—COMPETENCY—TRANSACTIONS WITH PERSONS SINCE DECEASED.
   Under Act No. 30, Pub. Acts 1903, providing that no person who shall have acted as agent in the making or continuing of a contract with any person who may have died shall be a competent witness in any suit involving such contract, complainant's natural father was incompetent to testify to an agreement made between him and complainant's foster father for her benefit when she was a child two years of age, by which deceased agreed to make complainant his heir.

Appeal from Monroe; Lockwood, J. Submitted February 25, 1904. (Docket No. 109.) Decided July 27, 1904.

Bill by Lucy Bell Albring against Edward Ward and Martha Ward to establish a right to share in the distribution of the estate of Henry Ward, deceased. From a decree for complainant, defendants appeal. Reversed.

The complainant is the daughter of John Bennett and Ann Bennett. Her mother died soon after her birth. Mr.

and Mrs. Bennett had two other small children. The three were taken care of by Mr. Bennett's mother. The mother did not feel equal to the care of the three children, and both Mr. Bennett and his mother desired to provide for her maintenance and care elsewhere. Mr. Bennett was a farmer of little means. Mr. Bennett and his mother took Lucy to the home of Henry Ward and his wife, the defendant Martha. After keeping her a few months, they concluded to take steps under the statute to adopt her. Accordingly Mr. and Mrs. Ward and Mr. Bennett went before the judge of probate on December 8, 1881, and executed articles of adoption under the statute then supposed to be valid. In that instrument Mr. Bennett acknowledged that he executed the instrument for the purpose of giving his consent in writing to the adoption of his daughter Lucy, of the age of two years, by said Henry and Martha; that she should thereafter bear the family name of the Wards; and that he further consented that she, so adopted by them, might become their heir at law. The Wards, on their part, declared that they adopted said child as their heir at law; that they desired her to bear their family name; and that they desired the judge of probate to enter an order confirming the adoption of said child. Lucy lived with her adopted father and mother until she was 17 years of age, when she was married. She continued to live with them for a while after her marriage, and finally went away with her husband to live in Toledo. Mr. Ward died in August, 1901, leaving his widow and a son, the defendant Edward. The defendants denied the legal adoption of complainant, and thereupon she filed this bill praying to be declared the owner in fee simple of the undivided one-half of the real estate of said Henry Ward, subject to the widow's dower interest. The bill alleges a contract between Henry Ward and complainant's father, Mr. Bennett, to the effect that if Mr. Bennett would relinquish all claim to the custody, care, and control of his daughter, and all his rights as her father, to the said Henry Ward, the said Ward would make her his heir

137 MICH.—23.

at law, and that at his death she should inherit a share of the property as if she were his natural child. The answer of defendant Martha alleges that Mr. Bennett and his mother brought the child to their home, saying that his mother could not keep them all; that, unless she could persuade some one to take the child, her father would be compelled to take her to the State home for dependent children; that they left said child with the Wards, promising to return later in the day and take her away; that after about a week Mr. Bennett's mother returned, saying she hoped that they would change their mind and keep the child, and that Mr. Bennett would do anything desired to give up the legal custody and control of the child, and thereafter proceedings were taken to adopt her. Pleadings and proofs were taken in open court, and a decree entered for the complainant. The decree, according to the opinion of the learned circuit judge, is based upon his finding that Henry and Martha Ward agreed with complainant's father that she should be an heir at law with each of them equally with their own son, Edward.

*George M. Landon* and *Southard & Southard*, for appellants.

*C. A. Golden* and *Ray & Cordill*, for appellee.

GRANT J. (*after stating the facts*). Heirship, except that based upon consanguinity, can be created only by a constitutional law by which "relations of paternity and affiliation are recognized as legally existing between persons not so related by nature." Heirship by adoption is unknown to the common law. *Morrison* v. *Sessions' Estate*, 70 Mich. 297 (38 N. W. 249, 14 Am. St. Rep. 500); *Sarazin* v. *Railroad Co.*, 153 Mo. 485 (55 S. W. 92); *Ex parte Clark*, 87 Cal. 641 (25 Pac. 967). If the statute is held void, or, if valid, is not complied with, the adoption fails, and the supposed adopted person obtains no interest in the property or estate of the adopting per-

son.   Void articles of adoption are no evidence of them-
selves of a contract for an interest in property, real or per-
sonal.   Mr. Ward and his wife, at the urgent request of
the complainant's father and grandmother, took steps un-
der the then statute for adoption, intending to adopt the
complainant.   The papers drawn and the order made were
such, and such only, as were provided by the statute.
That statute was held unconstitutional.   *People* v. *Cong-
don*, 77 Mich. 351 (43 N. W. 986).   By the articles, even
if valid, Mr. Ward made no contract with complainant's
father or with her to give her any specific interest in any
of his property.   Complainant had no contract with Mr.
Ward, the specific performance of which she could en-
force.   At most, it was only a statutory proceeding to es-
tablish heirship, which left the right of property to depend
alone upon such heirship.   Such void articles for heirship
cannot be converted into a contract for the sale of land,
and complainant in this suit claims only an interest in
land by virtue of a supposed contract.   Complainant's
father was a witness for her, and undoubtedly endeavored
to make her case as strong as possible.   He stated the
transaction in the following language:

"We all came to Monroe and consulted Judge Phinney,
and they said they wanted to adopt the child as their own
lawful heir.   That was the way it was understood.   That
was the way I understood it.   It was put down on the
paper that way, and was all the arrangement we had.   I
signed the paper when it was prepared.   I supposed it
was an adoption."

The above language of the witness is consistent with the
theory of adoption.   It has no reference to any other re-
lation, or any attempt to convey any interest in property
other than by adoption.   But this testimony of the father
is inadmissible under Act No. 30, Pub. Acts 1903, which
provides that no person "who shall have acted as an agent
in the making or continuing of a contract with any person
who may have died, shall be a competent witness in any
suit involving such contract."   If any contract was made,

it was made by Mr. Bennett on behalf of his daughter. A more appropriate case for the application of the law cannot well be imagined. Counsel for the complainant rely mainly on *Wright* v. *Wright*, 99 Mich. 170 (58 N. W. 54, 23 L. R. A. 196). Several authorities are cited in the opinion in that case, written by Justice Long, and concurred in by Chief Justice McGrath. The authorities were found not to be in harmony. Justice Long, in his opinion, sustained the title of the defendant upon the ground that upon the undisputed facts there was an implied contract that the defendant was to have the property. That case differs from this in several important particulars. Mr. Wright lived till he was about 23 years of age upon the farm, supposing he was the natural son of Phineas R. Wright. Phineas had no children. Frank, the supposed adopted son, had rendered valuable services upon the representation and belief that he was the heir. Phineas had accepted such services, knowing that Frank understood that he was his son and would receive the property. In my concurring opinion, I said:

" Each case of this character stands upon its own peculiar circumstances and facts, upon which relief is granted or denied. * * * They gave defendant their own name, and, by their conduct, language, and treatment, represented to him that he was their own son. He lived with them upon this understanding until some time past the age of majority. He had a right to rest and act upon the belief that he was the legal heir. So long as his reputed father and mother chose to let him repose in this belief, others had no right to interfere. * * * Defendant rendered services upon the faith of his relationship. Those services were accepted in reliance upon such relationship, declared in the most solemn manner. There are no children interested."

No such state of affairs exists here. Complainant, when a mere child, knew who her real father was. She had rendered no service in the belief she was the real daughter of Mr. Ward, or that she would be an heir to his property. About as soon as she was old enough to

render to Mr. and Mrs. Ward any valuable service, she was married, and soon after left them. Some witnesses testified to statements made by Mr. and Mrs. Ward in which they spoke of her as their daughter, and that she called them father and mother. Such statements are consistent with the theory of supposed legal adoption. They are not evidence of a contract to make her an heir, or to convey her any property. If there were any evidence of a legal contract on the part of Mr. Ward to make complainant his heir, such statements might be of some value in proof of the contract. But as already stated, the proceedings for adoption afford the sole basis for any claim to such a contract, and they are valueless for that purpose. If *Wright* v. *Wright* is construed by the profession to mean that void articles of adoption can afford the basis of a contract for heirship, it should, in my judgment, be overruled. Counsel for complainant cite some authorities which are not cited in *Wright* v. *Wright*. We have examined them, and find that some of them are based upon an express contract that the complainant should have a share of the estate. Such is the case of *Hall* v. *Gilman*, 77 App. Div. 458 (79 N. Y. Supp. 303), where the contract claimed was that if the claimant would live with him (the deceased), and care for him, as a daughter, until his death, she should have all his property. In so far as any of them may be in contravention of this opinion, we decline to follow them.

Decree reversed and bill dismissed, with costs of both courts.

The other Justices concurred.