THADDEUS I. C. PEMBERTON V. HEIRS OF GEORGE C. PEMBERTON.

FILED MAY 17, 1906.  No. 14,334.

1. **Contract of Adoption: ENFORCEMENT.** A contract in writing for the adoption of a child, although ineffective as a legal, statutory adoption, may upon a proper showing be enforced in equity.

2. ———: ———. A written contract of adoption which contains a condition binding the foster-parents to make the child "an equal heir to his part of our estate the same as one of our children" may upon a proper showing be specifically enforced against the estate of the deceased foster-parent, who has died intestate.

3. **Case Followed.** *Kofka v. Rosicky*, 41 Neb. 328, followed and approved.

ERROR to the district court for Washington county: LEE S. ESTELLE, JUDGE. *Reversed with directions.*

*F. Dolezal*, for plaintiff in error.

*Clark O'Hanlon, Herman Aye* and *F. A. Brogan, contra.*

OLDHAM, C.

In 1893, George C. Pemberton died intestate in Washington county, Nebraska, and was at the time of his death the owner in fee of certain lands situated in that county. An administrator of the estate was appointed, all debts were paid, and the administration closed prior to the institution of the suit at bar. At the time of Pemberton's death, he left surviving him his wife, Margaret A. Pemberton, but no children born of his marriage. In 1863,

and while the plaintiff herein, whose natural name is Griffith, was in the custody of his mother, Kate A. Griffith, under a decree of the district court for Douglas county in an action for divorce instituted by the mother against the father, the mother entered into a written contract with Samuel A. Whittier and Deborah Whittier, his wife, in the nature of a deed of adoption, in which she relinquished all right, claim, and demand to the plaintiff, and authorized the Whittiers to adopt said child as their own and give it their name, and to direct, manage, educate, and control said child as their own. The Whittiers on their part specifically agreed that they would immediately take the child into their control and custody, adopt him as their own, and thereafter provide for, educate, and rear him according to their pecuniary and social standing. The contract further recites: "We do further agree that at our death the said child shall be an equal heir to his portion of our estate the same as one of our children, it being the express understanding that we are to treat, control, and in every way provide for said child as our own, we having hereby adopted it as such, and it is mutually agreed that from this date said child shall be known and called by name 'Charles Whittier.'" This instrument was signed by Kate A. Griffith, Samuel Whittier, and Deborah Whittier, and acknowledged before a justice of the peace in Douglas county, on the 27th day of April, 1863. After the execution of this instrument the Whittiers took the child to their home in Washington county and kept him for a couple of months, when by agreement with the deceased, George Pemberton, and wife they delivered the child and the written contract in the form of a deed of adoption to the Pembertons. It appears from the testimony that, when the deed and child were delivered to the Pembertons, the deceased took the deed or contract and went to Omaha to see an attorney, Honorable John I. Redick, to find out if it was necessary to have new papers made to secure the adoption of the child. From some source of information he concluded that it was not, and then scratched out the

names of the Whittiers from the deed and had inserted
the names of the Pembertons in their stead.   The paper,
so changed, appears to have been signed and acknowledged
on the 27th day of June, 1863, by George Pemberton and
wife, although it is shown by the testimony of the wife that,
while she signed the contract, she was not present when it
was acknowledged.   Thereupon the Pembertons took the
charge, control, and custody of the child, then an infant be-
tween two and three years of age, gave him their name,
sent him to school, and treated him in every particular as
their son, referred to him always as their son, and he in
turn addressed them as his father and mother.   He remained
with them, according to the testimony, and conducted him-
self as a dutiful and industrious son until past the age of 21
years, when, with the knowledge and consent of his foster-
parents, he engaged in business for himself in the state of
Oregon.   After he left the homestead he communicated
with his foster-parents, addressing them as "Pa" and "Ma,"
and received letters from them, written by the mother,
however, in which he was addressed as their son.   Five or
six years before the death of Mr. Pemberton he was
stricken with paralysis, and the wife telegraphed to the
boy, who returned at once and remained with his foster-
parents for over a month.   The written contract, above set
out, had been kept by Mr. Pemberton among his papers for
over 30 years, when, at one time on a visit of the plaintiff
to his home, Mrs. Pemberton delivered the contract to him,
and he had it in his possession at the time this suit was
instituted.   It appears from the testimony of the neighbors,
as well as the surviving wife, that Mr. Pemberton in his
lifetime had always referred to plaintiff as his son, and
had frequently stated to his neighbors that plaintiff was
his adopted son and that "some day all his property would
go to him."   It also appears from testimony of one of the
neighbors, Mr. Whitford, that shortly before the death of
the intestate, when his paralysis had progressed until he
was unable to articulate any words, but while he was still
in possession of his mental faculties and responded to

questions asked him by nodding or shaking his head, the witness asked Pemberton if he did not want to make a will. To this question deceased shook his head, meaning no. He then asked him if he wanted the law to take its course, and the deceased nodded his head, meaning that he did. The witness then asked him if he wanted Thad (plaintiff) to have two-thirds and his wife one-third of the property, and again he nodded his head in assent. After the administration of the personal effects of the deceased, plaintiff instituted the suit at bar in the district court for Washington county for the specific performance of the contract of heirship above set out. Two collateral heirs, a brother and a sister of the deceased, answered in the proceeding, denying plaintiff's claim, and alleging that they were each entitled to an undivided one-fifth of the land. At the close of plaintiff's testimony the court dismissed his bill, and entered judgment for the answering defendants. To reverse this judgment plaintiff brings error to this court.

The contest is simply between the plaintiff and the collateral heirs of the deceased, the rights of the surviving wife being recognized in all the pleadings. The wife, however, testified, as far as the court would permit, in support of plaintiff's claim. At the time the contract in issue was entered into there was no statute in the state, or rather territory, of Nebraska, providing for the adoption of children by deed or otherwise, so that plaintiff's right to recover must stand or fall on an interpretation of the written contract, admitted to have been signed by the deceased and his wife at the time above set forth. The question of acknowledgment of this contract is immaterial, as it would be ineffective as a deed of adoption, even if it had been regularly acknowledged by both husband and wife. The question as to whether the delivery of this paper was made to plaintiff by direction of the deceased is also immaterial, because the right of action, if any, on the paper does not depend upon its delivery. The writing offered in evidence was and is admissible for the

purpose of showing a written contract between the plaintiff's natural mother, legally entitled to his care and custody, and the deceased and wife for plaintiff's benefit. Oral testimony, showing a full compliance with the terms of the contract by the plaintiff, was properly admitted for the purpose of showing that the contract was fully executed on the part of all parties thereto. The fact that there is no testimony in the record, other than the instrument itself, that the mother, Mrs. Griffith, ever consented to the change of names in the contract is immaterial, in view of the fact that such change was made by deceased and wife, and that the natural mother never repudiated the change, but on the contrary permitted the Pembertons at all times to assume and exercise full charge and control of the plaintiff under the terms of the written agreement. It does not lie in the mouths of the collateral heirs of Pemberton, who are claiming under him, to say that he changed the written instrument without the consent of the plaintiff's mother.

That specific performance of a contract of this nature will be enforced in equity, when properly established, is beyond dispute in this jurisdiction since the decision in *Kofka v. Rosicky,* 41 Neb. 328. In the case just cited, an infant child, named Josephine Kofka, was delivered by her parents to John Spilinek and wife, under a verbal agreement that Spilinek and wife, who were respectively aunt and uncle of the child, would adopt her as their own and make her their heir, so that at the death of the Spilineks she would inherit all the property of which they died possessed. The child took the name of Spilinek, and lived with her foster-parents as their child until about 15 years of age, when the foster-father committed suicide, while insane, and also mortally wounded his wife, who died three or four days later. The wife made a will before her death in favor of the child, who was still a minor, and who, with her father as next friend, filed a bill in equity praying for a specific performance of this oral contract; and, notwithstanding the fact that there was a

46

statute of adoption in force in this state at the time the oral contract was entered into between the natural and foster-parents of the claimant, it was held that a specific performance of the contract should be granted, and a judgment granting such relief was entered in this court. In the discussion of this case by the writer of the opinion, authorities bearing on the question at issue from other jurisdictions were examined at considerable length. This might properly excuse us from a reexamination of the authorities commented upon in the opinion, were it not for the fact that it is contended by counsel for the collateral heirs that this decision was chiefly influenced by the holding of the supreme court of Michigan in the case of *Wright v. Wright,* 99 Mich. 170, 58 N. W. 54, and that this decision has been overruled by the subsequent holdings of the Michigan court in *Albring v. Ward,* 137 Mich. 352, 100 N. W. 609, and *Bowins v. English,* 138 Mich. 178, 101 N. W. 204.

In suits of this character the relief granted necessarily depends on the facts and circumstances surrounding each particular case. While certain general principles are applied, yet the application of these principles to a particular case depends on its special environment. While we do not concede, because of different conditions surrounding the cases, that the conclusion reached in *Kofka v. Rosicky, supra,* was necessarily influenced by the decision in *Wright v. Wright, supra,* yet, because this contention is strongly urged by defendants, we have reexamined the latter case, as well as the cases in which it is said to have been overruled. As a result of our investigation, we find that in the case of *Wright v. Wright, supra,* the plaintiff, when about two years old, was indentured or bound to his foster-parents until he was 21 years of age, and it appears from the statement made in the dissenting opinion that there was no contract in this indenture that the child should inherit as an heir of the persons to whom he was bound. It further appears that afterwards the foster-parents under an unconstitutional

statute attempted to legally adopt the child as their heir.
It also appears that the child lived with the parents, and
after his attempted adoption took their name and
conducted himself as a dutiful son toward them until the
death of the adoptive father; that from the time of the
adoption the father regarded him as his son, spoke of him
as such, and desired that he should inherit his estate. The
majority opinion of the the court was written by Long, J.,
and directed a specific performance of the contract. Grant,
J., concurred in the decision in a separate opinion.
Hooker, J., dissented, placing his dissent on the prop-
osition that no contract was proved in which the deceased
had agreed to make plaintiff his heir, that the right of
heirship depended on the legality of the adoption, and
that, as the statute providing for the adoption was
unconstitutional, the pretended adoption was a mere
nullity, that the contract of indenture made no provision
for the heirship of plaintiff and was the only contract that
was proved, and that the subsequent oral promises of the
foster-father to make plaintiff his heir were without
consideration and constituted a mere *nudum pactum.* This
dissenting opinion was concurred in by Montgomery, J.
It will be noticed that in this decision there is nothing,
even in the dissenting opinion, that makes against the
conclusion reached in *Kofka v. Rosicky, supra.* In *Albring
v. Ward, supra,* the only contract attempted to be proved
was an abortive attempt on the part of the foster-parents
to adopt a child under an unconstitutional statute of
Michigan. Grant, J., rendered the opinion in the case
and distinguished the facts from the facts commented
upon in his concurring opinion in *Wright v. Wright,
supra.* He did say, however, that, if it was understood
by the profession from the language of Judge Long in
*Wright v. Wright* that void articles of adoption can afford
the basis of a contract of heirship, it should, in his
judgment, be overruled. In other words, he simply holds
that something more must be established than mere void
articles of adoption to entitle a foster-child to recover as

an heir.   The opinion in *Bowins v. English, supra,* was also written by Grant, J., and depended on the construction of a written contract made between the father of the claimant and her foster-parents.   It was determined that by the terms of this contract the deceased never agreed to either adopt the child or to make her his heir.   While the natural father of the child agreed that she might be adopted and have her name changed by the legislature, if the foster-parents so desired, there was no agreement on the part of the deceased that he would do so.   And while the child lived with the foster-parents, her name was never changed nor was she ever adopted, although she was provided for by the will of the foster-mother, and was also provided for by gifts from the foster-father.   Under these circumstances, the court held that there was no equity in her bill for specific performance of a contract that deceased had never entered into.

We are also cited by the defendants to the holding of the supreme court of the state of Missouri in *Davis v. Hendricks,* 99 Mo. 478, 12 S. W. 887, as tending to support the judgment of the trial court in the instant suit.   In this case the facts were that the child was taken by the foster-parents under an agreement with the natural father that they would make her their heir.   There was some written agreement to this effect that appears to have been entered into, but was not produced at the trial.   The foster-parents subsequently completed the adoption of the child by act of the legislature of the state of Missouri, and had her name legally changed to that of the foster-parents.   She was raised, educated, and cared for as a child of the foster-parents.   She was also provided for, with other legatees, in the will of the foster-father.   She brought her suit asking for a specific performance of the contract of adoption, by which she claimed she was entitled to inherit the entire estate of the deceased.   The contest was between the claimant and the legatees of the will of the deceased, and the court, in disposing of the case, said:

"The strongest case made by the evidence for the

plaintiffs is that McCormick agreed to adopt the child and make her his heir. Such an agreement falls far short of the one alleged, namely, that he agreed to grant and devise to her all his property at his death. The proved agreement only places the adopted child in the position of a natural child."

We think this decision, in so far as it holds that the agreement proved gave the plaintiff the rights of heirship as a natural child, makes against rather than for the decision rendered by the learned trial judge in the case at bar. For if, under that decision, the deceased and his wife had died intestate, plaintiff, under her contract of adoption, would have taken the entire estate.

In this connection, our attention is called by plaintiff to a later decision of the supreme court of the state of Missouri in the case of *Healey v. Simpson*, 113 Mo. 340, 20 S. W. 881, in which the facts and circumstances surrounding the contract of adoption are very similar to those of the instant suit. In this later case the foster-parents entered into a contract with the parents of the child in the state of Ohio, by which they agreed to adopt the child, and in which it was further agreed, "that said Evangeline Brewster shall have and inherit from the estate of said parties of the second part in the same manner and to the same extent that a child born of their union would inherit." After entering into this contract, the foster-parents removed to the state of Missouri, took the child with them, gave her their name, and treated her in all respects as their own child. The child, after coming to maturity, married, and later, in 1883, died, leaving three children of the marriage surviving her. The foster-father procured a divorce from his wife and remarried, and died intestate in 1886, leaving his second wife surviving him. The children of Evangeline Brewster brought an action, in which they prayed for a decree establishing their rights under the contract of adoption entered into for the benefit of their mother, and declaring them to be the heirs at law, and as such entitled to the estate. The lower court

sustained a demurrer to plaintiff's evidence, which judgment, on review, was reversed in the supreme court in an opinion wherein it was said: "The instrument of writing in question cannot operate as an adoption, as it did not come up to legal requirements, but it can operate as a contract for adoption, which may, upon a proper showing, be specifically enforced in equity." The agreement in this case was the same in substance as that contained in the contract now alleged upon.

As against these authorities it is of no avail to suggest that, notwithstanding the existence of the contract sued upon, the deceased could have disposed of his property as he pleased during his lifetime, by deed, devise, or otherwise. It is true that he might have done so, and also true that he did not. The deceased plainly lived up to both the letter and spirit of the contract in every particular, and died in the belief that its conditions would be carried out as he desired they should be. And we think there is no reason in equity and conscience why a decree of specific performance of this contract should not be granted.

We therefore recommend that the judgment of the district court be reversed and the cause remanded, with directions to enter a decree as prayed for in the petition.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the cause remanded, with directions to enter a decree as prayed for in the petition.

REVERSED.