MYRTLE CHEHAK, LINDA ANDERSON and BERTHA BATTLES
    v. DELAPHINE BATTLES and MINNIE MANN, Appellants.

Contract of adoption: SPECIFIC PERFORMANCE: STATUTE OF FRAUDS: TESTAMENTARY CHARACTER. An instrument by which, in consideration of the surrender to them of a child, parties accept the duties of parents to the child and agree that it shall have all the rights of inheritance, may be specifically enforced as a contract so as to secure to the child its interest in the estate of the adoptive parties, although invalid as an instrument of adoption because not acknowledged and recorded as required by law.

    And such an agreement is not within the statute of frauds since a surrender of the child is part performance; nor is it testamentary in character so as to be affected by the statute relating to the execution of wills.

*Appeal from Jones District Court.*— HON. WM. G. THOMPSON, Judge.

FRIDAY, JANUARY 18, 1907.

    ACTION to quiet title to a forty-acre tract of land. The defendant in a cross-petition claimed an undivided one-fourth interest therein. To this plaintiffs filed a demurrer, which was sustained, and, as defendant elected to stand on the

ruling, the cross-petition was dismissed, and she appeals.— *Reversed.*

*Vorhis & Haas,* for appellants.

*Rickel, Crocker & Tourtellot,* for appellees.

LADD, J.— Mary J. Battles was seised of the land in controversy at the time of her death in 1890, and, as it was a homestead, her husband continued in possession until 1904, when he died. Mrs.. Battles left her surviving three daughters, the plaintiffs, who inherit the property and are entitled to a decree giving title in them, unless the defendant has some interest therein by virtue of the following contract, to wit:

> Know all men by these presents, that I, Mary Neugent, of the county of Humboldt, and State of Iowa, in consideration of the natural love and affection I bear to Mrs. Mary J. Battles and Edward Battles, of same county and State, and also and for other divers good cause and considerations me the said Mary Neugent moving, have given and granted, and by these presents do give and grant unto the said Mary J. Battles & Edward Battles my infant daughter, not yet named. Said child is given to them for the purpose of adoption as their own child and for no other purpose; and such child shall be named as they shall seem fit and bear the name of Battles. And the said Mary J. Battles and Edward Battles hereby covenant that upon the execution of these presents that they and each of them accept the rights, duties and relations of a parent to this child and shall in all respects be that of a child born to themselves in the state of wedlock, and that the same shall include all the rights of inheritance by law.

In pres. of                                           her  
Daniel Harvey.                              Mary X Neugent.  
I. A. Averill.                                      mark.  
                                            Mary J. Battles.  
                                            Edward Battles, Jr.

This was acknowledged by Mrs. Neugent, but not by Mrs. Battles or her husband, nor was it recorded. Under the statutes then in force the instrument of adoption to be valid must have been acknowledged by all the parties thereto and duly recorded. See chapter 107, title 17, Code 1860; section 3250 *et seq.* Code; *Long v. Hewitt,* 44 Iowa, 363; *Gill v. Sullivan,* 55 Iowa, 341; *Shearer v. Weaver,* 56 Iowa, 578; *McCollister v. Yard,* 90 Iowa, 621; *Bresser v. Saarman,* 112 Iowa, 720. See *Fouts v. Pierce,* 64 Iowa, 71. Appellant concedes that such is the rule in this State, but contends that the decisions cited are not controlling, inasmuch as the cross-petitioner is not claiming an interest in the land by virtue of being adopted as the child of Mrs. Battles and her husband, but is asking for the specific enforcement of a written contract between her mother, Mrs. Neugent, and Mrs. Battles, by the terms of which the latter, in consideration of the surrender of the child by the former its mother, and permission to name the same, expressly covenanted and agreed that she accepted the rights, duties, and relations of a parent to this child, and that the same " shall acquire all the rights of inheritance by law."

Adoption was unknown to the common law, being repugnant to its principles and the institutions upon which it was founded. It was recognized by the civil law, however, even prior to the reign of Justinian, and has long been practiced in different countries of Europe, though generally with limitations of more or less importance. See *Succession of Unforsake,* 48 La. 546 (119 South. 602); *Abney v. De Loach,* 84 Ala. 393 (4 South. 757); *Morrison v. State of Sessions,* 70 Mich. 297 (38 N. W. 249, 14 Am. St. Rep. 500). Though a contract of adoption could not be sustained at common law, the courts of equity enforce such contracts, whether oral or in writing, with respect to property rights involved. See *Van Tine v. Van Tine,* 15 Atl. (N. J. Ch.) 249 (1 L. R. A. 155); *Sharkey v. McDermott,*

91 Mo. 647 (4 S. W. 107, 60 Am. Rep. 270); *Kofka v. Rosicky*, 41 Neb. 328 (59 N. W. 788, 25 L. R. A. 207, 43 Am. St. Rep. 685); *Wright v. Wright*, 99 Mich. 170 (58 N. W. 54, 23 L. R. A. 196); *Sutton v. Hayden*, 62 Mo. 101; *Grantham v. Gossett*, 182 Mo. 651, 670 (81 S. W. 895); *Godine v. Kidd*, 19 N. Y. Supp. 335; *Burnes v. Smith*, 21 Mont. 251 (53 Pac. 742, 69 Am. St. Rep. 653); *Winne v. Winne*, 166 N. Y. 263 (59 N. E. 832, 82 Am. St. Rep. 647); *Quinn v. Quinn*, 5 S. D. 328 (58 N. W. 808, 49 Am. St. Rep. 875). In Wright v. Wright, *supra*, the adoption papers had been drawn in conformity with existing statutes of Michigan regulating the procedure which were subsequently declared unconstitutional, and yet the court enforced the agreement drawn up in conformity therewith as a contract. But in *Albring v. Ward*, 137 Mich. 352 (100 N. W. 609), the same court held that declarations before a probate judge made for the purposes of adoption would not be enforced as a contract, and this was followed in *Bowins v. English*, 138 Mich. 178 (101 N. W. 204). The surrender of a child by its parent to another, who at the time agree to adopt the child as his own or to devise property to or to make him his heir, is generally held as a valid consideration; and, as it is made for the benefit of the child, he may maintain an action for specific performance. See the above cases and *Daily v. Minnick*, 117 Iowa, 563. In *Healey v. Simpson*, 113 Mo. 340 (20 S. W. 881), the court in referring to a written contract, said:

Conceding the execution of the contract, and that the mother and the child complied with its terms on their part (which we must do on a demurrer to the evidence), did plaintiffs have a *prima facia* case, which called for evidence on the part of defendant? We answer that we think they did. The instrument of writing in question cannot operate as an adoption, as it did not come up to legal requirements, but it can operate as a contract for adoption, which may, upon a proper showing, be specifically enforced in equity

[citing cases].   The surrender by the mother of all control of the child, and the services and companionship of the latter, constitute valid consideration for the promise of Brewster and his wife that she would " have and inherit from the estate of said parties   .   .   .   in same manner and to the same extent that a child born of their own would inherit." .   .   .   The influences of a child of tender years in the home circle are too sacred and holy to be estimated in dollars and cents.   And when the mother sent her child to dwell in another family, in a distant State, she yielded much of the affection and love, and Brewster by the same act gained the companionship of one who added no doubt to his enjoyment of life.

In speaking of the consideration in Godine v. Kidd, *supra,* the court said, after reciting the circumstances: " Upon these facts, who would question the worth, adequacy, and sufficiency of the consideration received by the adopting parents ?   Lives that are drear and blank are thus often times cheered and animated, and filled with new hopes and ambitions, fresh impulses, and awakened energies.   These are the contributions of youthful love and affection and companionship to childless old age."   We have discovered no case questioning the adequacy of consideration in an action like this.   In *Wallace v. Long,* 105 Ind. 522 (5 N. E. 666, 55 Am. Rep. 222), it was held that a parol contract to dispose of an interest in land for services to be rendered in the future was contrary to the statutes of fraud, and in *Wallace v. Rappleye,* 103 Ill. 229, the child was illegitimate, and under peculiar circumstances it was held that surrendering it to its putative father was not a good consideration.

The obligations of such a contract as of others are mutual, and the peculiarities of it such as emphasize the right of him who has faithfully performed his part of it to that portion stipulated by the other party.   It is impossible to estimate by any pecuniary standard the value to the parties receiving a child, nor is there ever any design of so

measuring the service and solace bestowed. The nature of the contract necessarily precludes all thought of returning the consideration, and after the mother has yielded the possession of her child with all that this means, and it has lived until majority as a dutiful and loving son or daughter with those who have promised to cherish him or her as their own, and that he or she shall share their estate, it is beyond the power of the adoptive parents or the courts to place the mother or child in the situation in which they were before the agreement was entered into. There is no such thing in cases like this as placing the parties in *statu quo,* and the remedy must be by specifically enforcing the contract or the denial of rights which have been fully earned, and in good conscience and justice ought to be enforced. The statute of frauds cuts no figure in the case, for part of the consideration, the surrender of the child, was paid at the time the agreement was executed. Nor is the statute of frauds an obstacle to the enforcement of such contracts, notwithstanding (Wallace v. Long, *supra*) there has been full performance by the party demanding relief when this is sought.

Nor is such an agreement contrary to the statute relating to the execution of wills. It does not partake of the nature of the testamentary disposition of property. On the contrary, it is to be executed mainly during the life of the adoptive parents, with a portion of the compensation to be made at their death. Winne v. Winne, *supra.*

But the appellant contends that the statutes relating to adoption are exclusive, and that no right to take property by an adopted child may be created in any other way. There is some basis for this contention in at least two of the decisions of this court. In *Tyler v. Reynolds,* 53 Iowa, 146, the appellant in his argument stated that, even though adoption papers had not been filed for record, he should be accorded the right to inherit under the statute, and that, also, his adoption had been established by parol agreement. The court held that in order to effect statutory

adoption the papers must be recorded, and that there was no evidence of an adoption by parol.   In *Shearer v. Weaver,* 56 Iowa, 578, the agreement of adoption contained no reference to the property of the adoptive parents, but specifically cov-- enanted that they should act towards the child " in the same manner as were he their own natural child, giving to such child all the rights and privileges as such," and added that the agreement was entered into by virtue of the statutes. The adoption papers were not filed until after the death of the adoptive father, and for this reason it was held that there was no statutory adoption.   But the defendant also alleged that the " adoption paper was an agreement that if said Isaac should remain with said J. P. Weaver till the said Isaac should arrive at the age of majority, or till the death of said J. P. Weaver, then the said Isaac should have all the rights of a legitimate child of said J. P. Weaver." It was also alleged that there was an oral agreement of adop- tion which was subsequently reduced to writing as appeared in the adoption papers, and defendant asked that this be specifically enforced.   The court in deciding the case said: " Our statute makes full and explicit provisions as to the descent of property, and describes the persons who may take by descent.   The rights of inheritance existing between par- ent and child by lawful birth are by statute conferred upon parent and child by adoption.   Code, section 2310.   In our opinion rights of inheritance cannot be conferred by a parol agreement.   The case of *Vanduyne v. Vreeland,* 12 N. J. Eq. 142, referred to in *Tyler v. Reynolds,* 53 Iowa, 146, is a *nisi prius* case.   Besides, this case was decided in 1858, whilst the first New Jersey statute providing a mode for the adoption of children was, so far as we have been able to discover, enacted in 1877.   Our statute having provided specifically the means whereby one sustaining no blood rela- tion to an intestate may inherit his property, the rights of inheritance must be acquired in that manner, and can be acquired in no other way.   It is manifest from this lan-

VOL. 133 IA. 8

guage that the court proceeded on the theory that the grantee
of the child Isaac was basing his demand for the property
on the ground that Isaac had inherited it, and we are in full
accord with the proposition that the right of inheritance as
such may be conferred upon a stranger in blood only by pur-
suing the method prescribed by statute. The authorities
upholding the right to specific performance never decree that
the child is entitled to the right of inheritance as an heir.
They do not undertake to change the status of either party,
but merely to enforce a contract which has been fully per-
formed on one side. The distinction was pointed out in
*Burns v. Smith,* 21 Mont. 251 (53 Pac. 742, 69 Am. St. Rep.
653). "The question that confronts us here is: Does the
plaintiff claim to be an heir of the deceased? Or is not
her claim adverse to the law? She is not an heir at law,
nor does she claim under or through an heir of the estate.
Whatever claim she has, we think, results and comes to her
under the contract alleged to have been made with the de-
ceased in his lifetime as set out in the complaint."

In *Winne v. Winne,* 166 N. Y. 263 (59 N. E. 842, 82
Am. St. Rep. 647), it was argued that one person could not
make another an heir unless of his own blood, and the court
disposed of this by saying that the claim was based on con-
tract. To the same effect see *Kofka v. Rosicky,* 41 Neb. 328
(59 N. W. 788, 25 L. R. A. 207, 43 Am. St. Rep. 685).
Though the right to enforce such a contract was raised in
Shearer v. Weaver, the court seems to have passed upon it
as though what was sought was a decree fixing the status of
the child to be such as to entitle him to inherit the estate as
he would had he been a natural child of Weaver. This
being so, that decision cannot be regarded as decisive of the
question now before us. To take by inheritance one must
be within the statutes relating to the succession to estates.
If he claims by blood, he must establish his claim by show-
ing there are no others of nearer degree, and in addition
thereto, if illegitimate, that he has been recognized as re-

quired by law. If he claims through relationship by marriage, he must establish such relationship, show that there are no blood relatives, and that there are no others of nearer degree. If he claims by adoption, he must show a valid execution of the instrument of adoption and compliance with the requirements of the statutes relating to adoption. But these things being established, the succession is cast upon him arbitrarily by law; and his right to the succession depends only upon his ability to show himself within the class upon which the statute casts the inheritance. It does not follow, however, that because the descent is fixed by statute that an estate may pass in no other way. It may be disposed of in whole or part by will. Statutes also regulate the execution of a will. But neither such statutes nor those relating to descent are permitted to interfere with the disposition of an estate or part thereof by contract to the exclusion of those who would otherwise acquire it by inheritance or devise. Specific performance of a contract to convey property in consideration of services where these have been rendered in pursuance of the agreement is decreed. *Franklin v. Tuckerman,* 68 Iowa, 572; *Mills v. McCaustland,* 105 Iowa, 187; *Brandes v. Brandes,* 129 Iowa, 351; *Soper v. Galloway,* 129 Iowa, 145. So a contract to will property to another is valid and enforceable. *Allbright v. Hannah,* 103 Iowa, 98; *Bird v. Jacobus,* 113 Iowa, 194.

If a contract with an adult to convey or will property in consideration of services rendered may be enforced by such adult, and one for whose benefit a contract has been made may enforce it, as was held in *Daily v. Minnick,* 117 Iowa, 563 (where deceased agreed to give a child forty acres of land for permission of the father to name him), upon what tenable theory shall the court, upon demand of a child who has met all the obligations imposed, deny specific performance of the solemn agreement of a deceased person, who upon the ample consideration of the surrender of such child by its natural parent, with the privilege of naming it

and the benefits derived from its care, custody, and services, has promised that such child shall share in or take all of his estate, and has died without providing for the execution of his promise? To so decree is not to award the right to inherit, which depends on status, but to enforce a contract for the disposition of property, and there is no reason for denying an infant the right to such relief when it is freely accorded to an adult. In Missouri, where a statute similar to ours is in force, the Supreme Court held it to be no impediment to the enforcement of such an agreement. In Sharkey v. McDermott, *supra,* a man and his wife agreed to adopt the plaintiff in the action when a child and leave their property to her by will, but failed to execute the agreement of adoption. The plaintiff wholly performed her part of the contract, and it was held " that the contract was a valid one, and that plaintiff was entitled to its specific performance as to the disposition of the property, she having a paramount claim of a creditor or equitable owner in consideration of her services "; the court saying: " This agreement was not merely and solely to adopt the plaintiff, but was in part to leave the plaintiff the property at their death. The fact that the parties and each of them may have failed and neglected to execute it, so far as the adoption was concerned, should not, we think, exonerate them from its further obligation to transfer their property, when they could no longer use it, to plaintiff. If plaintiff is without the status of an adopted child through no fault of her own, but through the neglect of those so promising, this is only additional ground for the enforcement of the contract as to the disposition of the property."

In Healey v. Simpson, *supra,* the agreement was oral, and merely that the child should take the property as though an heir, and a decree of specific performance was entered, quoting, as we have, from Sharkey v. McDermott with approval. The argument in favor of the rule announced is, as we think, unanswerable. Moreover, the adoption contem-

plated by our statute includes far more than the mere right to inherit. Section 3253 of the Code declares that "upon the execution, acknowledgment and filing for record of such instrument, the rights, duties and relations between the parent and child by adoption shall be the same that exist by law between parent and child by lawful birth." Whether under this language the foster parent may inherit from the adopted child was left open in *Burger v. Frakes,* 67 Iowa, 460, and the authorities elsewhere are not harmonious; the Supreme Court of Indiana sustaining the right (*Paul v. Davis,* 100 Ind. 422) and that of Wisconsin denying it (*Hole v. Robbins,* 53 Wis. 514 (10 N. W. 617). Difference in the language of the statutes may account for the disparity of opinion. The possible right of the foster parent to inherit from the child is suggested, merely as a possible incident to statutory adoption which may not be involved in a contract.

It was said in *Bray v. Mills,* 23 Ind. App. 432 (54 N. E. 446, 55 N. E. 510), that the "object of adoption is to place as near as possible the child adopted in the place of a natural one; to give it the position in the family as a child both of the husband and wife, conferring on it rights and privileges of a child. Among other consequences the effect of adoption is to cast succession upon the adopted in case of intestacy of the adopting father." After referring to the fact that modern legislation on the subject is based on the Code of Justinian, it is further said: "The name of the child is changed. Its identity is lost in that of the adopting parents. It becomes, in all but blood, their child." In *Tilley v. Harrison,* 91 Ala. 297 (8 South. 802), the court observed that, " though adoption may not by operation of the statute originate and establish all the legal consequences and incidents of the natural relation of parent and child, when the adoptive father declares his own name as the name by which he wishes the child to be thereafter known, and takes it into his family to be treated as a child, he assumes the duties of a natural parent, and is entitled to its custody and

services or earnings as against all persons, unless it may be the true parent, when they have not consented to the adoption." It is manifest that much more is included in statutory adoption than the mere right of inheritance. The adoptive parents mày exercise precisely the same control over the child as though it were their own by birth, and are entitled to its services, and, on the other hand, the child is entitled to the care and maintenance of such parents. The purpose of the statute was to establish the relation of parent and child as completely as this may be possible · between strangers in blood, and the inheritance of property is simply an incident, though important, to that relation. The relations of the child are severed from its natural parents and affiliated with its adopted parents, so that the former may not interfere with its care or custody any more than as though a stranger. But does it follow that a contract not going to this extent is not valid? Suppose that by agreement the natural parents retain partial control of the child, as that of directing where he shall be educated, or that he shall continue to bear their name, or on the other hand, the adoptive parents stipulate that the child shall not acquire the right of inheritance, would such conditions be valid? Surely they would, though the adoption would be limited and not in compliance with statutory requirements. And yet there is precisely the same ground for declaring such contracts invalid as for refusing to enforce others because through the neglect or design of the adoptive parents the statutes of adoption have not been followed in some other respect, as in omitting to acknowledge or record the agreement of the parties. If an instrument fails as a will because of some informality in its execution, and yet contains all the essential elements of a contract, it may be enforced as a contract. *Emery v. Darling,* 50 Ohio St. 160 (33 N. E. 715); *Maddox v. Rowe,* 23 Ga. 341 (68 Am. Dec. 535).

So, an agreement of adoption may fall short of meeting

the statutory requirements and yet be a valid and enforce-able contract. The agreement in the case at bar stipulated that plaintiff should " acquire all the rights of inheritance by law." This was equivalent to saying she should share in their estate as though their own child, but not as such. It does not purport to declare that her status should be such as to entitle her to inherit, but merely that as a consideration on the part of Battles and his wife she shall acquire a por-tion of their property to be determined definitely at their death. It is a principle in equity that that is certain which can be made certain, and this happened upon the death of Mrs. Battles. *Garard v. Yeager,* 154 Ind. 253 (56 N. E. 237). See *Pemberton v. Pemberton,* (Neb.) 107 N. W. 996. If the child has filled the place of a dutiful daughter to the adoptive parents until attaining majority, the financial benefit stipulated in the contract of adoption ought not to be denied because through the neglect of another, without fault on her part, statutory adoption has not been effected. The consideration according to the petition has been fully paid on the one side, the child surrendered by her mother, the name of her foster parents borne, and all the advantages which youth and affection can bestow enjoyed; while, on the other, though the adoptive parents have cherished and maintained her as their own, they have not performed that portion of their promise which entitled her to share in their estate, and this we hold ought in justice and good conscience to be specifically enforced. The demurrer to the petition should have been overruled.— *Reversed.*