Starnes v. Hatcher.

HUGH S. STARNES *et al. v.* HENRY HATCHER, Admr., *et al.*

(*Nashville.* December Term, 1908.)

1. **SPECIFIC PERFORMANCE.** Allegations of bill construed to show a written contract and its embodiment in a petition for adoption of children.

In a suit for specific performance of a contract, made by the intestate and collateral ancestor of the defendants, to adopt the complainants, and, at his death, to leave them all his property as the heirs of his body, where the bill alleges that the said decedent and his wife, who were childless, applied to the custodian of the complainants, then orphan children, for their custody and control, and received them into their possession upon the distinct understanding and agreement, made with their custodian who was acting for them *in loco parentis*, that decedent would legally adopt them as his own children, and that, at his death, they should receive his property; that the verbal contract was reduced to writing, read over to the decedent, fully understood and agreed to by him, and signed by him, the contract being embodied in a petition to the county court for the adoption of complainants; that under said agreement in writing, the decedent undertook, in consideration of receiving complainants, to rear, educate, nurture, and adopt them, treat them as if they were his own children, and give them his property as if they were the heirs of his body; and that with this understanding complainants were delivered to the decedent and his wife, and were by them accepted under and in pursuance of the contract, the effect of the allegations, upon demurrer to the bill, is not merely that there was a verbal agreement, put into writing only in the form of a petition to the county court for the adoption of the complainants, but that the agreement, verbal in the beginning, was reduced to writing and read to, understood by, and signed by decedent, and was contemporaneously embodied in the petition to the county court for the adoption. (*Post, pp.* 332-337.)

Starnes v. Hatcher.

2. **SAME.** Contract to adopt and leave property enforced as to property after adoption becomes impossible by death.

While the contract of a person to adopt certain children and to leave them his property as his heirs will not, as to the adoption, be specifically enforced by the courts after the death of such person, because such specific performance is made impossible by his death, yet the other part of the contract to leave such children his property may be specifically performed; for these two obligations are distinct in character.   (*Post, pp.* 337, 338.)

3. **SAME.** Same.  Of contract to leave property to children to be adopted, though the contract to adopt is not performed.

Where a person agreed in writing to adopt certain children and to leave them his property at his death, and obtained possession of them, from their custodian acting *in loco parentis*, with this distinct understanding and agreement, and took them into his family, reared and educated them, and they lived with him for years believing him and his wife to be their father and mother, and rendered all the devotion and services that duty required from children to parents, and the person failed to adopt them, and to leave his property to them at his death, they would be entitled to specific performance of the agreement to leave his property to them after his death.

Cases cited and approved: Townsend v. Vanderwerker, 160 U. S., 171; Jaffee v. Jacobson, 1 C. C. A., 24; Rhodes v. Rhodes, 3 Sandf. Chy. (N. Y.), 279; Winne v. Winne, 166 N. Y., 263; Rivers v. Rivers, 3 Desaus. (S. C.), 190; Johnson v. Hubbell, 10 N. J. Eq., 332; Van Dyne v. Vreeland, 11 N. J. Eq., 370; Van Tine v. Van Tine (N. J. Eq.), 15 Atl., 249, 1 L. R. A., 155; Wright v. Wright, 99 Mich., 170; Albring v. Ward, 137 Mich., 352; Bowins v. English, 138 Mich., 178; Kofka v. Rosicky, 41 Neb., 328; Gupton v. Gupton, 47 Mo., 37; Sutton v. Hayden, 62 Mo., 101; Sharkey v. McDermott, 91 Mo., 641; Nowack v. Berger, 133 Mo., 24; Owens v. McNally, 113 Cal., 444; Chehak v. Battles, 133 Iowa, 107; Daily v. Minnick, 117 Iowa, 563; Quinn v. Quinn, 5 S. D., 328; Burns v. Smith, 21 Mont., 251.

Starnes v. Hatcher.

FROM WILLIAMSON.

Appeal from the Chancery Court of Williamson County.—JOHN ALLISON, Chancellor.

HARRY S. STOKES, JOHN T. ALLEN, and A. B. WATKINS, for complainants.

C. R. BERRY, R. H. CROCKETT, B. L. RIDLEY, and HENDERSON & HENDERSON, for defendants.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The bill in this cause was filed by the complainants, Hugh S. Starnes and his sister, Esta Rosa Newsom, praying for specific performance of a contract, which they alleged was made by Samuel W. Starnes, the intestate of the defendant Henry Hatcher, and the ancestor of certain of his codefendants, by which the deceased obligated himself to adopt these two complainants, and at his death leave to them his estate, both real and personal. The bill was dismissed on demurrer, and the case is before us on assignment of error to this action of the chancellor.

The facts alleged by the bill, and as such admitted by the demurrer, are that some years after the marriage of Samuel W. Starnes and his wife, no children having been born to them, and realizing none were likely to be born as the result of their union, they applied to Judge Ferriss for the custody and control of the complainants. Prior to this the mother of the latter (having survived their father), being *in extremis*, requested that he take charge of the complainants and find for them a home with some gentleman and his wife who were childless, and who would rear them as their own children. Acting on this request, Judge Ferriss arranged with the deceased to take them, "upon the distinct understanding and agreement that he would legally adopt them as his own children, and at his death they should receive his property."

Under and by virtue of the terms of this agreement, the complainants were taken into the home of Mr. Starnes and given his name. He clothed, sheltered, and educated them. They were taught for years to consider and to feel that Mr. Starnes and his wife were their real parents. Both of these parties were deeply attached to the complainants, and exhibited their love in many ways. This affection was reciprocated by the complainants, who continued to render to their foster parents all the services that duty required or affection suggested. When the complainant Mrs. Newsom grew into womanhood, and she was sought in marriage by her present husband, he solicited her hand from Mr.

Starnes, whom he supposed to be her father in fact. The latter consented to the marriage, and when the ceremony took place he gave her away to the man of her choice. In 1888 Mrs. Starnes died, and the complainants were left to the sole care of the surviving husband. They waited on him and attended to all his wants. They rendered many and divers services in the home and about the farm, believing that they. were his children. After her marriage, Mrs. Newsom went to the home of her husband, but frequently returned as a vistor to that of Mr. Starnes, and was at all times received by him as his daughter. The complainant Hugh remained with his foster father and looked after him and his interests with affectionate attention, as he grew feebler with increasing years, up to the time of his death. This occurred when he was in his seventy-ninth year.

After his death it was ascertained that adoption proceedings were never instituted by the deceased, or, if so, were never perfected, and the result is that the defendants, related to him collaterally, and who were at no time attentive to or thoughtful of his welfare, have made claim to his estate, and have taken possession of all of it that is not in the hands of the administrator, and are now insisting that the complainants have no right to share in or receive anything from the same. The question, then, is: Upon these facts, are the complainants entitled to a specific performance of the contract alleged?

Starnes v. Hatcher.

That this case is one of strong natural equity cannot be denied. Independent of the contract, the services rendered by the complainants for a long series of years, the tender and affectionate relations existing between the parties, and the continued recognition by Mr. Starnes and his wife of the complainants as their children, establish a strong moral claim in their favor as against the defendants, who, so far as this record shows, have no equity, but, if they take the estate of the deceased at all, do so as a matter of strict law. These considerations, however, while they give emphasis to the claim set up in the bill, would not of themselves be sufficient to warrant the relief which is sought thereon. Such relief must be had upon the ground of contract obligation.

It is insisted by the demurrants that redress cannot be given, even conceding the existence of such an obligation, because the case is one within the statute of frauds, and is not embodied in writing as required therein. This insistence, however, grows out of a misapprehension of the allegations of the bill on this point. After setting up the agreement between Judge Ferriss and Mr. Starnes, at the time the complainants were delivered into the possesion of Mr. Starnes, the bill proceeds as follows: "Said verbal contract was then reduced to writing, which was read over to the said Starnes, fully understood and agreed to by him, and to which he attached his name; the same being embodied in a petition to the county court asking that

he be permitted to adopt the complainants. Judge John C. Ferriss, who had the custody and control of said children, and was acting *in loco parentis,* read over the paper writing to Mr. Starnes, and saw him sign and execute the same. Under said agreement in writing Mr. Starnes undertook, in consideration of receiving the children, to rear, educate, nurture, and adopt the complainants, treat them as if they were his own children, and they were to receive his property as if they were the heirs of his body, and born in legal wedlock," and that "it was with this understanding the complainants were delivered to the obligor, Samuel W. Starnes and his wife, and were by them accepted under and in pursuance of this contract."

The contention of the demurrants is that in the paragraph just quoted the complainants do no more than allege an oral agreement, put into writing in the form of a petition to the county court, asking that Starnes and his wife be permitted to adopt the complainants, and that, this being so, the agreement, in view of the statute of frauds, if for no other reason, is not enforceable. We think this a mistaken view. We understand, from the allegations just quoted that the contract, in the beginning verbal, was reduced to writing, which, when read over to Mr. Starnes, was fully understood by him, and that to this he attached his name. This writing not only embraced the terms of the contract set forth, but these were contemporaneously embodied in the petition to the county court, asking permission

on the part of Samuel W. Starnes to adopt these infants. The last paragraph, or sentence, of the excerpt, given above, adds emphasis to this construction. There it is distinctly alleged that under the written agreement Mr. Starnes undertook to adopt the complainants, take them into his home, nurture and educate them, and at his death leave them his property, as if they were heirs of his body and born in legal wedlock.

But, if it were true, as urged by the demurrants, that the agreement was to be found alone in the petition prepared for and signed by Starnes, to be submitted to the county court for the purpose of obtaining its permission to the act of adoption of these parties, and that petition given into the hands of the petitioner with the view of carrying out that plan, it might be argued with much force, and possibly be found sustained by authority, that even that writing itself would be a sufficient compliance with the requirement of the statute of frauds. This, however, is simply suggested, because we do not regard the question, in the view which we take and have expressed with regard to the averments of the bill, as necessary for decision.

We think, also, the insistence of the demurrants that the import of the bill is alone to require a specific performance of an agreement to adopt is unsound. While such relief is prayed for, the scope is far beyond that, inasmuch as it is distinctly asked that, upon the ground of the agreement alleged, the complainants be let into

121 Tenn—22

the estate of the deceased. Unquestionably, so far as
the contract contemplated fixing a *status* for these com-
plainants as heirs by statutory adoption, this now can-
not be done. By the death of Starnes, who failed dur-
ing life to comply with his obligation to adopt these
parties, it is made impossible for the courts to do what
he should have done in this regard. But it does not
follow from this that the complainants are to be cut
off from all relief. As we have seen, his agreement was
not only to adopt, but to leave these parties at his
death his estate. Thus it covered two different duties,
which he obligated himself to discharge. These were
as distinct in character as if he had bound himself in
a strictly legal manner, upon a valuable consideration,
to convey two tracts of land to another. To a bill to
enforce specific performance of such a contract, he
would not be permitted to repel one seeking its en-
forcement upon the ground that, subsequent to the con-
tract, he had incapacitated himself from a performance
of it in its entirety by selling to a third party one of
the tracts covered by his covenant. In such case, upon
the election of the complainant, relief would be
granted, at least to the extent of the tract remaining
unsold. Story's Equity Jurisprudence, sec. 779. This
principle, so evidently just, invoked by the complain-
ants, has been applied by the courts in many case;
which furnish analogies to, and in others embracing
facts very similar to, the present. In *Rhodes v. Rhodes*,
3 Sandf. Ch. (N. Y.), 279, there was an agreement

made between two brothers, who had always lived together and owned their property in common, by which the one having a family agreed to provide for and take care of the other, who had no family, and who was subject to epileptic fits, during his life, in consideration that the former should have all the real and personal estate of the latter. The former performed to the letter his part of the agreement, and at the death of the latter, as against his heirs, it was held that this part performance of the parol agreement between the two relieved the case from the operation of the statute of frauds, and made it one in which the court was authorized to grant a specific performance. In *Rivers* v. *Rivers*, 3 Desaus. (S. C.), 190, 4 Am. Dec., 609, the chancellor says: "It appears to me that to make a will in a particular way on proper considerations is as much a subject of contract as any other, and he who makes a contract on this subject is as much bound thereby as he would be by any agreement on any other subject. . . . I conclude, therefore, that the party had a right to bind himself to make his will in a particular way by an agreement, and the court has the power to enforce the agreement." In *Johnson* v. *Hubbell*, 10 N. J. Eq., 332, 66 Am. Dec., 773, it is said: "There can be no doubt but that a person may make a valid agreement binding himself legally to make a disposition of his property by his last will and testament. The law permits a man to dispose of his own property at his pleasure, and no good reason can be assigned why he

may not make a legal agreement to dispose of his property to a particular individual, or for a particular purpose, as well by will as by conveyance, to be made at some specified future period or upon the happening of some future event. It may be unwise for a man in this way to embarrass himself as to the final disposition of his property; but he is the disposer by law of his own fortune, and the sole and best judge as to the time and manner of disposing of it. A court of equity will decree the specific performance of such an agreement, upon the recognized principle by which it is governed in the exercise of this branch of its jurisdiction. In *Jaffee* v. *Jacobson*, 1 C. C. A., 24, 48 Fed., 24, 14 L. R. A., 352, it is said: "We concede the law to be that a court of equity will specifically enforce a promise to leave to another the whole, or a definite portion, of one's estate as a reward for peculiar personal services rendered, or other acts done by the promisee, which are not susceptible of a money valuation, and were not intended to be paid in money, provided the consideration has been substantially received at the promisor's death." To the same effect is *Townsend* v. *Vanderwerker*, 160 U. S., 171, 16 Sup. Ct., 258, 40 L. Ed., 383.

As has been said, the principle has been applied by many courts in cases with facts like the one at bar. In all of the cases where the relief sought has been given, it will be found that the defense was largely put upon the ground that the agreement rested in parol, and

therefore was unenforceable under the statute of frauds. These cases are found in jurisdictions where the rule prevails that a partial performance relieves the party seeking specific relief from the operation of the statute. It would seem from this that it had been practically conceded by the profession everywhere that, the agreement being in writing and distinct in its terms, no doubt of the right and the power to decree specific performance thereof had been, or could be, entertained. In the present case we have, as has already been seen, an agreement duly reduced to writing and signed by the party to be charged, with a full performance of their duty upon the part of the complainants, who come into a court of equity seeking the benefit of a remedy clearly within its jurisdiction.

Upon an examination it will be found that the courts have gone very far in reaching the equity growing out of contracts such as the one set up in the bill in this cause. In *Van Dyne* v. *Vreeland,* 11 N. J. Eq., 370, an uncle had made an agreement with the father of an infant child that he would adopt the boy, and after the death of himself and wife all the property should go to him. There was no formal adoption; but the child lived in the family for twenty-five years, assumed the family name, and treated these parties as parents. Upon these facts the court held there was a performance upon the part of the child, and the implied agreement as to his inheritance could be enforced. In *Van Tine* v. *Van Tine* (N. J. Eq.), 15 Atl., 249, 1 L. R. A.,

155, the principle is carried very far. In that case there was no agreement to adopt, or to leave the estate to the infant; but it was held that a parol obligation assumed by one to treat the child of another as the obligor's own child, accompanied by a virtual, although not formal, adoption of it, acted upon by both parties during the obligor's life, without more, would be enforced on the death of the obligor, by adjudging the child entitled as a child to the property of the obligor which was undisposed of by will. In *Wright* v. *Wright,* 99 Mich., 170, 58 N. W;, 54, 23 L. R. A., 196, the facts were that the claimant in question entered the family of the deceased when about one and one-half years old, under an agreement entered into between the superintendent of the poor, under whose charge he then was, and the deceased, by which the infant was bound to the deceased until he became twenty-one years old; that subsequently the family name of the deceased was given to the claimant, and that then a petition was filed by the deceased and his wife in one of the courts of Michigan declaring their intention to make the claimant their heir at law, and in accordance with this petition an order to that effect was then made; that from the time of this order until the death of his parents by adoption the claimant had remained a member of their family, performing duties as if a child born to them. Later the statute under which this effort at adoption was made was held unconstitutional; but, as it was apparent that the adopting parties supposed that the act of adoption had

been successfully accomplished by the proceeding taken
for that purpose, and the relation thereafter between
the parties was like that of parent and child, it was
held that the contract might be implied, and would be
enforced in equity, to leave to the claimant, as an heir,
the property of the adopting parent.   It will be ob-
served in that case, as in the New Jersey case of *Van
Tine* v. *Van Tine,* just referred to, there was no agree-
ment in the beginning to adopt, nor at any time was
there an expressed purpose to leave claimant the prop-
erty of the adopting father.   The obligation to leave to
the complainant this property at the death of the adopt-
ing father was implied from the facts of the case, and
enforced as against his collateral kindred.   It may be
that the authority of *Wright* v. *Wright,* in its general
effect, is somewhat weakened by the later cases of *Al-
bring* v. *Ward,* 137  Mich., 352, 100 N. W., 609, and
*Bowins* v. *English,* 138 Mich., 178, 101 N. W., 204;
but we do not understand them as affecting the rule
invoked in the case at bar and applied in other cases
which have been and  will  now  be  referred to.   In
*Kofka* v. *Rosicky,* 41 Neb., 328, 59 N. W., 788, 25 L. R.
A., 207, 43 Am. St. Rep., 685, a girl about seventeen
months old was given by her parents to her uncle and
aunt, under an agreement that they would adopt, rear,
nurture, and educate her, and that she was to be their
only child, and at their death should receive or be left
all the property which they might own.   She took their
name and lived with these parties until they died.   She

did not recognize or know her own father and mother in the true relation, but rather as uncle and aunt, and recognized her uncle and aunt as her father and mother. The uncle and aunt died possessed of real estate in the city of Omaha, the title to which they did not, by deed or will, transfer to this child. Although there had been no adoption of the child, and no writing evidencing the agreement of the parties, yet it was held that there was such a part performance of the contract on her part as entitled her to a decree giving her this property by way of specific performance. In *Nowack* v. *Berger,* 133 Mo., 24, 34 S. W., 489, 31 L. R. A., 816, 54 Am. St. Rep., 663, there was an oral contract for the adoption of a child and to make it an heir, which was enforced by the court; the evidence showing a performance by the child of the obligation resting upon it, and the court saying "that such contracts as the one here in litigation, in so far as they relate to the adoption of the child and making him an heir, have often been recognized and enforced in this State and elsewhere." For authority reference is made to *Sutton* v. *Hayden,* 62 Mo., 101, *Gupton* v. *Gupton,* 47 Mo., 37, *Sharkey* v. *McDermott,* 91 Mo., 641, 4 S. W., 107, 60 Am. St. Rep., 270, and quite a number of other cases. In *Owens* v. *McNally,* 113 Cal., 444, 45 Pac., 710, 33 L. R. A., 369, while under the peculiar facts of the case the contract in question was not sustained, the principle was recognized as being well established that an oral contract to give another all one's property at death, in consideration of

Starnes v. Hatcher.

care and service, will be enforced in equity, upon evidence of the performance of his or her part of the contract by the obligee. *Chehak* v. *Battles,* 133 Iowa, 107, 110 N. W., 330, 8 L. R. A., 1131, *Quinn* v. *Quinn,* 5 S. D., 328, 58 N. W., 808, 49 Am. St. Rep., 875, *Winne* v. *Winne,* 166 N. Y., 263, 59 N. E., 832, 82 Am. St. Rep., 647, and *Daily* v. *Minnick,* 117 Iowa, 563, 91 N. W., 913, 60 L. R. A., 840, will be found equally in point.

It is contended by the demurrants that the statutes relating to adoption are exclusive, and that no right to take the property, as an adopted child, can spring otherwise than from statutory adoption. It is to be observed, however, that the complainants are not claiming the right to be let into the estate of the deceased as adopted children; but they are asking for the enforcement of a contract, placing their right to relief entirely upon the obligation assumed by the deceased in that contract. The same defense was made in *Chehak* v. *Battles,* supra, where the parties resisting recovery relied, as do the counsel for demurrants in this case, upon certain earlier Iowa cases which seem to sustain that view. In the *Chehak Case,* however, those cases are explained and limited so as not to conflict with the principle announced in the case then in hand and recognized here. It is there said : "The authorities upholding the right to specific performance never decree that the child is entitled to the right of inheritance as an heir. They do not undertake to change the *status* of either party, but merely to enforce a contract which has been

fully performed on one side." To the same effect are the cases of *Burns* v. *Smith,* 21 Mont., 251, 53 Pac., 742, 69 Am. St. Rep., 653, and *Winne* v. *Winne,* supra.

It is further contended that the complainants should be repelled upon the ground of laches. If they were here setting up a right by virtue of adoption, or if they were seeking through the court to have done now what the deceased undertook in his lifetime to do—that is, have a decree of adoption—this contention might with some plausibility be relied upon. But, as has been seen, this is not the real purpose of the bill, although the prayer does embrace such relief. What is sought is that a performance of the contract to leave his estate to the complainants be enforced as against the defendants, who stand in the place of their ancestors. This feature of the contract was breached only at the death of Mr. Starnes, and upon the face of this bill it is clearly inferable that it was filed within a short time after that event occurred.

We are satisfied that error was committed by the chancellor in his disposition of this case. His decree is therefore reversed, and the cause is remanded for answer and proceedings.