W. P. CARNES, et ux. v. LIZZIE HENDERSON, et al.

Eastern Section.   June 15, 1929.

Petition for Certiorari denied by Supreme Court, December 7, 1929.

R. D. Taylor, S. E. Hodges and John Jennings, Jr., of Knoxville, for appellant.

Green, Webb & Bass, of Knoxville, for appellee.

PORTRUM, J.   This is a contest over the regularity of an adoption proceeding instituted in the county court of Knox county by J. L.

Henderson, deceased, wherein the petitioner sought to adopt Ivy Skaggs, an infant about two years of age, and to change her name to Ivy Henderson.

The mother of the child was a half-sister of the petitioner, and she had been deserted by her husband. The child was turned over to Henderson in 1897, and lived with him until his death on September 2, 1928. He left an estate consisting of six pieces of real estate, and valuable personal property. His heirs at law, including his half-sister and the mother of the child, Florence Skaggs Jordan, ignoring the adoption proceeding, instituted a suit for partition of the real estate among themselves in the county court. Ivy Henderson, who is now Mrs. W. P. Carnes, filed this bill in the chancery court, enjoining the partition proceeding in the county court, and praying to be declared to be the sole heir at law of her deceased adopted parent, J. L. Henderson. Mrs. Jordan, along with her brothers and sisters, answered the bill, denying the legality of the adoption, first, upon the ground that the mother of the child had no notice of the proceeding nor an opportunity to appear and contest it, and the adoption was without her knowledge and against her consent, and, second, that the decree was void because it granted the right to Henderson to adopt and contained no decretal form of adoption. The entire proceedings as they appear upon the records of the county court are as follows:

FRIDAY MORNING Sept. 17, 1897

"Court met pursuant to adjournment, present and presiding the Hon. G. L. Maloney, County Judge, etc., when the following proceedings were had, to-wit:

"J. L. Henderson, ex parte:

"This cause was this day heard upon the petition of James L. Henderson, which is in the words and figures following, to-wit:

"To the Honorable County Court of Knox county, Tennessee.

"James L. Henderson, ex parte petitioner:

"Your petitioner, James L. Henderson, respectfully shows to your Honor that he is a citizen of Knox county, and is thirty-five years of age, and that his wife is thirty-six years of age, and that they have been married fifteen years. No child has been born to their marriage.

"Petitioner is in well-to-do circumstances, having a good farm, and considerable personal property.

"Petitioner's sister, Florence Skaggs has a daughter two years of age named Ivy Skaggs and her husband and her are separated, and she (the said sister) has no means of supporting her said child, and desires that petitioner adopt said Ivy Skaggs as his child.

168

"Premises considered, petitioner prays, that this petition be filed and made a part of the record of this court, and that he be allowed to adopt the said Ivy Skaggs as his child as provided by the Code (M. & V.) 4388 to 4391, and that her name be changed from Ivy Skaggs to Ivy Henderson, and for all proper relief.

"James L. Henderson.

"Sworn to and subscribed before me this 17th day of Sept., 1897.

"W. A. J. Moore, Dept. Clerk."

"And upon consideration of said petition it is ordered that the same be made a record of this court, and that said James L. Henderson, and he is hereby authorized and empowered to adopt Ivy Skaggs as his child with all of the rights and privileges of a natural born child of said James L. Henderson including the capacity to inherit and succeed to the real and personal estate of said James L. Henderson as his heir and next of kin, and that her name be changed from Ivy Skaggs to Ivy Henderson."

"Court adjourned until tomorrow morning at 9 o'clock.

"Rec. 74-75.                            G. L. Maloney, Judge."

The Chancellor sustained the bill, held the adoption legal, and perpetually enjoined the prosecution of the partition proceeding. The defendants have appealed.

The first assignment of error attacks the decree, wherein it is said, "and that said J. L. Henderson, and he is hereby authorized and empowered to adopt Iva Skaggs as his child, with all the rights and privileges of a natural born child of said James L. Henderson, including the capacity to inherit and succeed to the real and personal estate . . ."

It is insisted that the decree is not decretal in form, only author-izing Henderson to adopt. This objection is not well founded. The decree was in the proper form. The definition of the words "to adopt" is to choose as one's own. The choice is personal and cannot be made by a court for an individual; the court may only authorize and sanction it, which completes the adoption. The statute recognizes the distinction between a decree of this character and the ordinary decree. Shannon's Code, section 5402, provides:

"The circuit and county courts of this State have concurrent jurisdiction to change names, to legitimate and authorize the adoption of children, on the application of a resident citizen of the county in which the petition is made."

Section 5410 of Shannon's Code provides: "Judgment.—The court, if satisfied with the reason given, may sanction the adoption by decree, entered upon the minutes, embodying the petition, and directing the terms of adoption."

It is noticed that the legislative body uses the terms "authorize" and "sanction." The decree in this case is in the words of the statute and is, therefore good. The word "authorize" contemplates an established act and not one to be performed in the future. The decree directed the terms of adoption for it provided the child should have "all the rights and privileges of a natural born child of James L. Henderson, including the capacity to inherit and succeed to the real and personal estate of the said James L. Henderson as his heir and next of kin, and that her name be changed from Ivy Skaggs to Ivy Henderson." The attack upon the decree is without merit and is overruled.

The assignment questioning the holding of the Chancellor that the mother, while not being served with formal notice of the adoption proceedings, in fact knew about said adoption proceedings and consented thereto, is more serious. We are unable to find any proof in the record bringing home to the mother knowledge of the adoption proceedings at the time. However, sixteen years thereafter, and when the child was sixteen years of age, the grandmother of the child, and the mother of Mrs. Jordan, testified that Florence, her daughter, told her some one had told her (Florence) that Jim had adopted her child. That was the first time she ever heard her daughter speak of it, and her daughter said that if she had known Jim intended to do it, he never would have got the child. As we have said, there is no satisfactory proof in the record that Florence knew of the adoption at the time. However, she has known of it for sixteen years, and during the time permitted her daughter to remain with her brother, acknowledging him and his wife as her father and mother. She only complained after the death of her brother, and for the admitted purpose of sharing in his estate.

The Chancellor was of the further opinion that Florence Jordan, knowing of the proceedings, could not and neither could her codefendants collaterally attack the decree of adoption, and his action in this respect is assigned as error.

Taking up and considering, first, the question of collateral attack upon the decree by the mother, Florence Jordan, and her brothers and sisters, who are the collateral kin of James L. Henderson, deceased. (We may state that James L. Henderson left a widow surviving who is concededly entitled to the widow's portion of his estate. She has joined with the adopted daughter in this contest but, her interest not being involved, it is not necessary to again refer to her.) The question of the right to collaterally attack a decree of this character is not free from doubt. The older cases denied this right, but later cases appear to have modified the former

holding. To make clear our statement, the pertinent cases will be reviewed.

The case of Crocker v. Belch, 104 Tenn., 6, 55 S. W., 307, was a collateral attack upon adoption proceedings. One Andrew Johnson left his estate of personal and real property to his widow; an adopted daughter filed a petition contesting the will upon an issue of devisavit vel non. The widow filed an answer denying the adoption, and the proceeding was certified to the circuit court, when the Circuit Judge ordered the petitioner to show that she was legally adopted. The grounds of the contest on the petition of adoption was its failure to state that the petitioner was a resident of the county in which the application was made, the statute requiring the applicant to be a resident of the county. The Circuit Judge, upon the merits, held in favor of the adopted child, and an appeal was prosecuted to the Supreme Court.

The court said:

"The provisions of the statute, supra, as well as others on the same subject, make the county court one of general jurisdiction over matters pertaining to the adoption and legitimating of children. It has been held that the decree of such court of general jurisdiction cannot be collaterally questioned, except for want of authority over the matter adjudicated, and in such case the record must show affirmatively such want of authority. In the absence of anything in the record impeaching the right of such court to determine the question involved, there is a conclusive presumption that it had such right. Reinhart v. Nealis, 17 Pickle, 173; Kindell v. Titus, 9. Heiskell, 727; Polk v. Harrison, 16 Lea, 82."

The case of Baskette v. Straight, 106 Tenn., 549, 62 S. W., 142, was not a collateral attack upon the adoption proceeding, there the adopting parent died, and his widow, who was not a party to the proceeding, and the child's mother were in a contest over its custody.

The case of In re Knott, 138 Tenn., 349, 197 S. W., 1097, was a direct attack, the father appealing from the judgment.

Redmond v. Wardrept, 149 Tenn., 36, 257 S. W., 394, was a collateral attack. To quote from the statement of the case: "Upon the death of Phynethia J. Redmond, March 16, 1921, the defendant, R. T. Wardrept, a brother was appointed on the same day administrator of the deceased. Thereafter, on the 18th day of April following, petitioner Ragan Redmond, brought this suit in the county court of Knox county, setting up that he was the legally adopted son of the deceased, and entitled to administer her estate, and praying for the removal of Wardrept and his own appointment in

his stead. The county court dismissed the petition, and this action was affirmed on appeal to the circuit court, but on appeal to the Court of Civil Appeals, the action of the lower court was reversed, and a decree entered sustaining the petition, and following this decree the case was brought to this court for review.

"The defendant, Wardrept, insists, first, that the decree of adoption of the county court upon which the rights of petitioner Redmond rest, is void because of the failure to give notice of the proceeding, and reliance is had upon In re Knott, 138 Tenn., 349, 197 'S. W., 1097, in which the court held that while the notice need not necessarily be a formal one, the natural parent should know of the proceeding and have an opportunity to resist the decree of adoption." The court decided this case upon the merits. The question of a collateral attack was not raised nor discussed.

In the late case of Bass v. Morton, 155 Tenn., 381, 293 S. W., 532, the adopted child filed a bill to recover the estate of her adopted parent. The collateral kin demurred, and insisted the adoption proceedings conferred no right of inheritance because the petition expressly excluded the right of inheritance. It was claimed that the decree was coram non judice and void. This was a collateral attack, but the attack was levelled at the decree because it was void and it is permissible to collaterally attack a void decree. However, the court said, "After the lapse of twenty years, the decree cannot be collaterally attacked."

In view of the uncertainty of the practice upon this question and other determinative questions arising, no decision is reached upon this assignment of error.

We are of the opinion that the mother, Florence Jordan, is estopped as an heir at law to attack the proceeding, and is likewise estopped by her conduct from attacking it as the mother of the adopted child.

"Estoppel of parties applies to privies in blood and in law. Nugent v. Powell, 4 Wyo., 173, 33 Pac., 23, 62 Am. S. R. 17; 20 L. A. A., 199.

"No action for revocation may be maintained by collateral heirs and legal representatives on any ground that would not have been open to the adopting parent, if living. In re Williams, 142 Cal., 70, 36 Pac. 407, 41 Am. S. R., 163; Cubitt v. Cubitt, 74 Kans., 353, 86 Pac., 475; Brown's Adoption, 25 Penn. Super 259; Sankey's case, 4 Penn. Co. 624, aff. 10 Penn. Cas., 139, 13 Atl., 760." See Adoption of Children, 1 C. J., sec. 105.

In the case of Redmond v. Wardrept, supra, the court said:

"Again there is plausibility in the insistence that whatever rights defendant Wardrept has, grow out of his relationship as a brother of Phynethia J. Redmond, who was herself a party to the petition for adoption, and who was, of course, bound under the proceedings instituted and actively participated in by her, and that Wardrept is not in any better position than his sister would be. Under all the circumstances of this case, we are therefore of the opinion that the attack upon the decree in the county court cannot be sustained."

See Adcock, v. Simon, 2 Tenn. App., 617.

Since this proceeding is sought to enjoin the partition proceeding by the heirs at law, and it appearing the heirs at law are estopped, then the decree of the chancery court perpetually enjoining the proceeding is conclusive, regardless of the right of the mother to attack the decree upon grounds disconnected from her claim as an heir at law. She may have certain rights to the custody of the child which she may under some circumstances prosecute with effect, but if she is estopped as an heir at law, she will not be permitted to use her personal rights as a shield to gain the end denied her by the estoppel. However, we are of the opinion that she is personally estopped and has lost any rights she may have had to the custody of the child by her long delay and laches.

The child has been adopted for thirty-three years, and is thirty-five years of age. She married at the age of sixteen and, after obtaining a divorce, married again. The mother's right to custody and love and care is at this late day in no wise affected. For sixteen years she has known of the adoption proceeding, and during the time permitted the child to remain with her adopted parents, knowing the adopted father intended the child to succeed to his estate. Had she asserted her claim prior to her brother's death, he, doubtless, would have made the child's rights certain by making a will, or otherwise transferring the property to her, for the proof is clear that he intended the child to have his estate.

It has been held that one guilty of laches in seeking relief for ten years is denied relief in an adoption proceeding. Brown v. Brown, 101 Ind., 340. Also a delay of twenty-one years will bar one because of laches. Brown's Adoption, 25 Penn. Super, 259. The mother should be repelled on account of her long delay from now, after such rights she may have had as mother no longer exist, from attacking the adoption, and also she should be personally estopped from setting up claim to the property, for the reasons above stated.

The decree of the Chancellor is affirmed, at the cost of the appellant.

Snodgrass and Thompson, JJ., concur.