## LILLIE SIMON ADCOCK et al. v. FRED SIMON et al.

Middle Section.    March 6, 1926.

Certiorari denied by Supreme Court, June 5, 1926.

1. **Adoption.** Parol evidence that a petition had been filed in court and decree granted was sufficient to establish a contract to adopt.

In an action by complainant to establish rights in another's property as an adopted child where the evidence showed that the party now deceased had filed a petition for complainant's adoption and the court had granted a decree of adoption but the same had never been placed of record, held that a contract for adoption was sufficiently established.

2. **Evidence.** Chancellor has a large discretion in admitting evidence.

In an equity case the chancellor has a large discretion in the admission of evidence and the record must show a manifest abuse of the discretion to warrant a reversal.

3. **Evidence.** Discretion of chancellor in admitting evidence held not abused.

In an action involving an adoption where the decree of adoption was never recorded and had been lost and where the witness was handed a paper and asked if in form and substance the paper was similar to the lost instrument, which was objected to as leading and improper, held that in view of other independent testimony it could not be said that the chancellor had abused his discretion in the admission of this testimony.

4. **Adoption.** Complainant is entitled to specific performance of a written contract to adopt.

Where a party makes a written contract to adopt a child and takes the child into his home and the child serves faithfully, but the party does not adopt it, held after the death of the party the child is entitled to specific performance of the contract and since the party cannot adopt the child it will be given the same interest in the party's property as if it had been adopted.

5. Estoppel. Children of a party who has taken a child under a contract to adopt are estopped to deny the adoption.

Children being privies in estate to their parents are estopped to deny an adoption where the parent entered into a written contract to adopt.

6. Adoption. Fact that complainant married against the will of party who agreed to adopt her does not estop her from demanding specific performance of the contract.

Where a party took a child under an agreement to adopt her and the child lived with him and served him until eighteen years old and then married contrary to his wishes, held not to be a breach of contract on her part such as to estop her from demanding specific performance and share in his estate.

7. Evidence. Statements by parties that they had not adopted the child which they had taken are self-serving in an action by the child to recover a part of their estate.

Where party takes a child under an agreement to adopt and later makes statements that he has not adopted the child, held such statements are self-serving in an action by the child to recover a part of the estate and not admissible as testimony. Statements to the contrary are statements against interest and are admissible.

Appeal from Chancery Court, Dickson County; Hon. J. W. Stout, Chancellor.

Affirmed and remanded.

F. S. Hall, W. C. Cook, of Dickson, H. N. Leech, of Clarksville, and B. D. Shriver, of Nashville for appellants.

Joe B. Weems and W. O. Hake, of Dickson, for appellee.

DeWITT, J. The bill in this cause was filed by Lillie Simon Adcock against the children of R. and Emma Simon, deceased, to set up and recover such interest in the estate of said R. Simon as she would be entitled to were she a bodily heir. This claim of right is based upon an alleged adoption of said complainant by R. Simon and contract alleged to have been made by him with her mother and with her custodian that he would adopt her and give her a full right to inherit with his own children in his estate; upon full performance by complainant of all of her duties as an adopted child; and upon an alleged estoppel on the part of said R. Simon and his wife, Emma Simon, as binding upon their children. The defendants, appellants here, deny that there was any agreement for adoption or was any valid adoption, or was any contract to give to the complainant the said rights of inheritance.

The cause was heard before the Chancellor and a jury. Answering the propositions submitted to them, the jury found that there was an agreement to adopt the complainant at the time she was delivered to R. Simon and Emma Simon; that a petition was presented by R. Simon to the county court or county judge seeking the adoption of complainant; that a decree of such adoption was granted by the county judge, that the said decree was delivered to R. Simon;

that R. Simon refused to surrender the custody of complainant to her mother; that R. Simon took the complainant from Mr. and Mrs. Page, her custodians, under a contract on his part to adopt her. From the evidence and the findings of the jury, the Chancellor found and decreed that at the time complainant, Lillie Simon Adcock, was taken by R. Simon and his wife, Emma Simon, they agreed that they would have complainant adopted and made an equal heir with his other children to all of their property and in pursuance of this agreement, they had prepared a petition in writing in regular form setting up and alleging proper premises therefor, and seeking and praying that complainant, Lillie Simon Adcock, be adopted to them and made an equal heir of theirs along with their other children; that this petition was presented in the county court of Dickson county, where a proper and regular decree of adoption was pronounced; that this decree and petition was handed by the county judge to R. Simon with instructions to hand it to the county court clerk in an adjoining office for entry, but that the said R. Simon failed to deliver the said paper as directed; that the said papers are now lost or mislaid, either unintentionally or fraudulently were made away with so that they cannot now be found or had, and that the failure to produce them is not due to the fault of complainant. The court further decreed that the heirs, distributees and personal representatives of R. Simon and Emma Simon are estopped to deny the adoption of complainant as an equal heir to the estate of R. Simon and Emma Simon; that the agreement that Lillie Simon Adcock should be made an equal heir be specifically performed by the defendants, that she is an equal heir in said estates and tenant in common in all of the property of said estates and the owner of a one-fifth undivided interest therein. The court decreed that complainant, Lillie Simon Adcock, is an adopted daughter of R. Simon and his wife, Mrs. Emma Simon. Motion for a new trial was made and overruled and the defendants appealed and have assigned errors.

Without going into discussion in detail of the testimony of each witness, we will say that we are of the opinion that there is abundant material evidence to support the following finding of facts:

Complainant's original name was Loubelle Harvill. The child of an outcast and destitute mother who was addicted to opiates, she was, when about eighteen months of age, given over by her mother to Mr. and Mrs. John Page for the purpose of finding a home for her. This was in the year 1903. They kept the child about three weeks. Mr. and Mrs. R. Simon requested that they be given the child and allowed to rear her. Their only daughter had married against their own consent and moved away and they said that they wanted this child to take the place of their daughter.

Mr. Simon declared to Mr. Page that he would not take the child unless he could adopt her. Mr. Page agreed to this, and the child was taken by them. She lived with them as one of the family until at about the age of eighteen years she married without the consent of Mr. Simon and he would have nothing further to do with her. Until her marriage, Mr. and Mrs. Simon were fondly devoted to her and treated her as their own child. As soon as she was able to render any service she began to help around the home. She went to school until she reached the fourth grade when she was taken out of school and put to work in a bottling factory owned by Mr. Simon. She was always faithful, industrious and helpful. She washed dishes in a restaurant, helped to make ice cream in an ice cream factory owned by Mr. Simon, did house work at the home, hauled bottles, worked often at night and on Sunday. There is no evidence of dissatisfaction or complaint of her as long as she lived with them.

Complainant never knew until she was thirteen years of age that she was not the real daughter of Mr. and Mrs. Simon. She never knew her mother, nor her brothers and sisters. Two years after complainant was given to the Simons, her mother came to the house and desired to see the child. Mrs. Simon would not allow her to touch the child and told her that she was going to have it adopted, that she would not take the world for it and she intended to rear the child. Mr. Simon told her that she could not get the child, that he had adopted her, that he had the papers. He took some papers out of his pocket, held them in his hands, and offered to show them to her, saying that he would not give up the child for anything, that he was attached to her, loved her as his own and intended for her to share with his own, and he intended to rear the child properly. She told him that if he thus had adopted the child and was going to rear her she would not do anything more and would go away and would not bother them any more. She kept her word. She did not read the proffered paper but relied upon the assurance that it was a paper of adoption. She had told Mr. Simon that she had come there to see about getting her baby, and he assured her that the baby was legally his. She admitted in her testimony that she was then addicted to morphine but had long ago abandoned the habit through the exercise of her own will power, had married again and had joined the Church.

The conversation between Mr. Page and Mr. and Mrs. Simon, which resulted in their taking the child, was witnessed by the two daughters and the son of Mr. and Mrs. Page, all of whom testify that the agreement was not only that the child would be adopted but that she would be made equal with any of the real children of Mr. and Mrs. Simon in inheritance. Mr. Simon told a number of the witnesses that he had adopted the child, that he loved her and

he intended that she should have the said inheritance. It is denied by certain of the Simon children that there was such an agreement, but it is sufficient as to this to say that this conflict in the testimony has been settled by the jury and there is ample positive evidence to support the finding of the jury. The jury also found, and the Chancellor approved the finding, that this child had been legally adopted by Mr. and Mrs. Simon. This finding is based upon the testimony of the Hon. W. R. Hudson, the former judge of the county court, and upon the testimony of various witnesses that Mr. Simon kept in his house a paper which he claimed was an authority from the court to him as custodian and adoptive parent.

There is much evdience that he did claim to have such a paper and that he showed the paper to one or more witnesses, although they did not read it. As aforesaid, he showed to the real mother of the child a paper which he claimed was a paper of legal adoption. Judge Hudson testified, over the objection of the defendants, that when he was judge of the county court, Mr. R. Simon came before him to have a little girl adopted, who was in his home and whom he was rearing, and declared that he wanted to make her equal with his children; that he had a petition praying for the adoption of the girl, and a decree of adoption; that the petition was regular in form and the decree was proper; that he granted the prayer of the petition, signed the decree, handed it back to Mr. Simon, and told him to give it to the clerk to be entered on the minutes, but it seemed that he did not take it to the clerk. He did not testify that the decree contained an affirmative provision conferring the right of inheritance. Counsel presented to him upon his examination a petition and decree purporting to be substantial counterparts of the originals and to set forth the recitals of the alleged original petition and decree and containing the adoption with the right of inheritance. The witness testified that he thought that these papers sought the same result as that which was provided in the original papers. It is insisted that the Chancellor erred in admitting this testimony. It does not affirmatively appear that the purported petition and decree were actually read to the jury; unless the recital at the end of the bill of exceptions that it contained all the evidence must be taken as showing that they were so read, they being made exhibits to the testimony of the witness. To present such papers to the witness with a question whether or not they were similar in form and substance to the lost papers was highly leading and improper; but the Chancellor had a large discretion and the question did not elicit any illegal evidence. Carroll v. State, 11 Lea, 481; Hoover v. State, 5 Bax., 672. We cannot hold that this was such a manifest abuse of discretion as to warrant a reversal. The witness had given independent testimony as to the contents of

the original papers before these purported copies were introduced. Upon this testimony the jury could have based their verdict. We must, therefore, conclude that there was a written contract to give to this child a status of inheritance, to let her into the estate of the decedent, the party to be charged. The case is thus brought within the rules set forth in Starnes v. Hatcher, 121 Tenn., 330. That case involved the right of two persons to enforce specific performance of a contract made in their childhood by Starnes to adopt them and leave them his estate.

The oral contract was later embodied in a petition to the county court, signed by Mr. Starnes, asking for the adoption of the children. The petition was never presented to the county court. It recited that the children were to receive the property of the petitioner as if they were the heirs of his body. They were delivered to him and his wife, and were by them adopted under and in pursuance of that contract. The court held that so far as it contemplated fixing the status for them of heirs by statutory adoption, this could not now be done; that by the death of Starnes, who failed during life to comply with his obligation to adopt the complainants, it was made impossible for the courts to do what he should have done in this regard; but two different duties, which he obligated himself to discharge, were covered by the agreement. These were as distinct in character as if he had bound himself in a strictly legal manner, upon a valuable consideration to convey two tracts of land to another. The court then reviewed many leading authorities and held that the complainants were entitled under their bill to a specific performance of the contract to leave to the children his estate at his death. Relief was thus granted upon the ground of contract obligation.

In the case before us there was a written contract embodied in the petition for adoption, and so, this case upon the question of specific performance falls under the authority of Starnes v. Hatcher, supra.

It is insisted that the complainant should be barred from the relief sought because she breached her contract by marrying and leaving the home of the decedent against his will. It must be presumed that the complainant was taken and reared by Mr. Simon with the implied understanding that in course of time she might become married; but it could not be regarded as a part of the implied understanding that when she reached an age for marriage she must marry agreeably to him. Until her marriage at the age of eighteen years, she had been dutiful, helpful, and affectionate toward him. Although he did not further feel kindly toward her, he did not leave any will seeking to deprive her of any share in his estate. We do not think that this insistence is well taken.

The real substantial consideration supporting contracts of inheritance is the share in the promisor's estate. The real intention is, not to adopt, but to transfer to the child a share in the estate. In a very large number of the cases reported upon this subject, this is held to be the broad and common sense view, and that such contracts are contracts of purchase and can be specifically enforced. See Note to Bauman v. Kusian, (164 Calif., 582, 129 Pac., 986) ; 44 L. R. A. (N. S.), 759. See also Notes to Hickox v. Johnston, (113 Kan., 99, 213 Pac., 1060) ; 27 A. L. R. 1325.

In the instant case it was sought to set up an adoption, but the statutes for adoption were not fully complied with, no decree being actually entered. It is true that our statutes for adoption are in derogation of the common law and must be strictly construed and substantially complied with. In re Knott, 138 Tenn., 353; Baskette v. Streight, 106 Tenn., 549.

But we are of the opinion that the appellants, being privies in estate to their parents, are estopped, under the facts shown, to deny an adoption. To permit a person to take an infant girl, change her name, have the enjoyment of her companionship and the great benefit of her long and helpful service, give her but a meager education, deprive her own mother of any privilege of seeing her, and hold her out not only to her mother but to society as an adopted child, then to take advantage of the failure to carry out an evident intention to adopt, and yet claim that she had not been legally adopted, would be to sanction a gross imposition, to characterize it mildly. While this precise question is not found treated in our reported cases, we have the benefit of many decisions in other States which have statutory provisions for adoption. The doctrine of estoppel to deny the adoption of a child was applied in many cases set forth in the Notes to Re Taggart, (Calif., 213 Pac., 504) ; 27 A. L. R., 1365. The same principle was applied by our Supreme Court as to a marriage in Bohlen-Huse Coal & Iron Co. v. McDaniel, 148 Tenn., 628. In that case it was held that although common-law marriages are not recognized in Tennessee, the doctrine of estoppel applies to the rights of interested parties—citing Johnson v. Johnson, 41 Tenn., 626; Smith v. Bank, 115 Tenn., 12, 89 S. W., 392; Gamble v. Rucker, 124 Tenn., 415. We see no reason why this principle should not be applied to the facts of the case before us.

It is insisted that the Chancellor erred in excluding testimony of certain witnesses of statements made by Mr. and Mrs. Simon that the child had not been adopted by them and that they did not intend to have her adopted. These were self serving declarations and were not admissible. On the other hand, the Chancellor did not err in admitting testimony of statements made by the deceased to the effect that he had adopted the child or intended to adopt her

and to make her equal with any one of his own children in the division of his estate. These declarations were self disserving and were admissible. Overton v. Hardin, 6 Cold., 375.

For the reasons thus set forth, we are of the opinion that the decree complained of reached the correct result, and it is affirmed. The costs of this appeal will be adjudged against the appellants and the sureties on their cost bond. The cause will be remanded to the chancery court of Dickson county for such further proceedings as may be necessary in furtherance of the prayers of the bill.

Faw, P. J., and Crownover, J., concur.