Taylor *v.* Aulton *et al.*

Aulton *et al. v.* Taylor.

(*Knoxville,* September Term, 1949.)

(May Session, 1950.)

Opinion filed June 9, 1950.

S. E. Hodges and Chas. D. Mounger, both of Knoxville, for appellants.

White & Leonard, and Chas. A. Maner, Admr. ad litem, of Knoxville, for appellees.

Mr. Justice Tomlinson delivered the opinion of the Court.

Sally J. Taylor, a widow, died intestate in 1948 the owner of a small farm. She never had any children, but Ralph Franklin Taylor, petitioner here, and complainant in the Chancery Court, insists that he is the owner of this farm by reason of certain adoption proceedings had in the County Court of Knox County in 1927, or by reason of an existing contract between intestate, on the one part, and the petitioner and petitioner's father for the adoption of petitioner, on the other part, or by reason of an equitable estoppel of the heirs at law of Mrs. Taylor.

Mrs. Taylor, the intestate, was a maternal aunt of petitioner, who was born in Overton. His mother died when he was about four years old. On account of the financial condition of the father the various relatives of the deceased mother took her four young children to their respective homes in order to prevent their being sent to an orphanage. Mr. and Mrs. Taylor took Ralph, and

about two years later there was instituted in the County Court of Knox County under Code, Sections 9568, et seq. the adoption proceedings involved in this suit.

The petition for adoption of Ralph is so worded as to create much of the controversy which the Court has been called upon to determine. The original petition is in the record. It commences with the statement,— "your petitioners Mr. T. H. Taylor and wife Sally" and then after relating facts hereinabove stated recites that this child, then six and one-half years old, "has asked to be adopted to petitioner and wife" . . . "and all of which Mr. Overton, the father readily consents to and is in court to verify this fact". Then there is stated "that petitioner prays" that the child be "legally adopted to petitioner and wife and *takes upon himself* all the obligations which is required by law to make him *his* legal heir as is required by law and binds himself to rear said child as one of *his* own". (Emphasis supplied.)

This petition recites that J. H. Overton, the father of the child, is in Court and consents to such adoption. It is signed "T. H. Taylor" and "J. H. Overton" by their mark, their respective signatures apparently being written by different persons. It is not signed by Mrs. Taylor.

The Chancellor in his opinion states that the attorney filing this petition was an illiterate man and that in his opinion this attorney signed the name J. H. Overton with the intention of signing the name of Mrs. Sally Taylor, the intestate here. There is nothing in this record to support the conclusion that the signature J. H. Overton was intended to be that of Mrs. Sally Taylor. On the other hand, it was to be expected that the father would

somewhere on the petition sign his name to evidence his consent to the adoption of his son.

█ Code, Section 9569 provides that the decree with reference to the adoption shall embody the petition and directs the terms of adoption. That code provision was complied with in this instance by the adoption decree being made to immediately follow the petition. Insofar as pertinent to this investigation, that decree is as follows: "The Court being satisfied for the reasons given, for the adoption, sanctions the same and orders that T. H. Taylor be allowed to adopt said child, Ralph Franklin Overton as his child, and that said child shall have all the privileges of a legitimate child of the said T. H. Taylor, with capacity to inherit from him and to succeed to his real and personal estate as heir and next of kin."

The Court may decree less than was asked by the petition. *Bass* v. *Morton,* 155 Tenn. 378, 293 S. W. 532.

Three years after the entry of this decree, T. H. Taylor died. The child continued to live in the home of the widow and went through the 6th grade in school and performed presumably those duties and chores that would be expected of a boy living in the home. This continued until at the age of eighteen years he married and left the widow, Mrs. Taylor, alone in the home. She was approximately sixty years of age at that time.

From time to time after this marriage, Taylor and his wife returned and lived for periods of about three months in the home, but apparently always as a sharecropper. He testified that "when she got up Jesus Christ could not live with her".

Mrs. Taylor died in 1948 at the age of sixty-nine. Shortly preceding her last illness a close neighbor found

her "on the bed practically unconscious" and "in a very unsanitary condition" and sent for her brother who carried her to a state hospital where she died. Ralph Taylor was there at the time this neighbor so discovered her condition.

On the day of the aforesaid adoption proceedings, Mrs. Taylor said to a neighbor that they had just been to the Courthouse where "they got him adopted". There are numerous witnesses who testify that she said to them from time to time that she had adopted Ralph, and that he would get all her property without the aid of a will. On the other hand, a neighbor testifies that in 1945 Mrs. Taylor said to her that "she did not adopt Ralph". This witness says that about 1944 or 1945 Ralph came to this witness with the request that Mrs. Taylor be taken to some one for the purpose of drawing her will.

The Chancellor in holding that the farm belonged to the boy said,—"I think the equities of this case are in his favor, . . . This is a very close case, I don't know as a matter of law,—I am going to give a decree in favor of this complainant. The mistake in the whole thing is that Gordon Mynatt (the attorney) meant to sign Sarah Taylor's name and signed Overton's."

One of the Judges of the Court of Appeals agreed with the Chancellor as to the equities and expressed the opinion that the adoption decree as drawn was "a mistake and a Court of equity should treat as done that which was intended to be done and which ought to have been done." However, the majority of the Court of Appeals was of the opinion that the claim of Ralph Taylor to this farm was not supported by either law or equity, and reversed the decree.

Certiorari was granted and the case has been orally argued.

■■ Both Mr. and Mrs. Taylor and their lawyer, and Overton, the father of Ralph, were in Court at the time of the adoption proceedings. However illiterate these parties may have been, we must proceed upon the theory that the County Judge did his duty by either reading the petition or having it read to him at the time it was presented in the presence of these so called illiterate people, and that he observed whatever doubt may have been reflected by the face of the petition as to what it sought. The notice by the County Judge of that so called doubtful meaning of the petition must be presumed to have resulted in an inquiry by the Court of those participating in the presentation of the petition as to just what was sought by that petition. To assume the contrary is to assume that the County Judge failed in an obvious duty, if indeed the petition is of doubtful meaning. The petition having thus been presented in the presence of these people, the Court entered at the conclusion thereof its decree that T. H. Taylor was allowed to adopt said child and the child was vested with the right of inheritance *from him.*

However illiterate the draftsman of that petition may have been, the petition does reflect it as a fact that this draftsman was familiar with the code sections providing the procedure for the adoption of children. One of those sections (No. 9568) is that the petition shall be signed by the person making application for the adoption of the child. This petition is not signed by Mrs. Taylor, and there is no proof whatever in this record that the omission was by error. While the petition is clumsily drawn, the reasonable construction of its allegations with reference to the intestate Mrs. Taylor is that it intends to state that Mrs. Taylor, as the wife of the applicant for

adoption, is willing for her husband to adopt the child. Naturally, a Court before permitting a man to adopt a young child wants to be informed as to the attitude of that man's wife with reference to the bringing of this child into the home which is hers as well as his.

It must be concluded that the petition for adoption does not permit the conclusion that a mistake was inadvertently made in the decree in the omission of the name of Mrs. Taylor as an adoptive parent. The integrity and verity of judgments of Courts upon matters over which their jurisdiction is general are not subject to attack because the pleadings are clumsily drawn. "The judgment derives its force from what the trial judge actually did", *Waller* v. *Skelton,* 186 Tenn. 433, 442, 211 S. W. (2d) 445, 448, "nor can we, for (allegedly) insufficient pleadings, scuttle such judgment", *Magevney* v. *Karsch,* 167 Tenn. 32, 51, 65 S. W. (2d) 562, 569, 92 A. L. R. 343, the entry of which was authorized. *Bass* v. *Morton,* supra.

█ There is no evidence to support the prayer of Taylor's bill that the Court find a contract to have been entered into between the intestate, Mrs. Taylor, and the father of this child for its adoption. There is nothing in the petition signed by the father of this child to indicate the existence of such an agreement with him upon the part of Mrs. Taylor. The statement in this petition is that Mr. Taylor will make him "his legal heir". Moreover, the father was present when the decree which was entered limited its effect to making the child a legal heir of the adoptive father only. We cannot hold that he was deceived in the total absence of evidence. There seems, therefore, to be no way to grant the prayer of the bill in this case that Ralph Taylor "have a decree for

specific performance of such contract". There was no "such contract".

The absence of evidence of such an agreement upon the part of Mrs. Taylor makes it impossible to bring this case within the holding of *Starnes* v. *Hatcher*, 121 Tenn. 330, 117 S. W. 219, and *Adcock* v. *Simon*, 2 Tenn. App. 617. In each of those cases it was agreed by the proposing adoptive parent to give the child the adoptive parent's property at death or to make him an heir of such adoptive parent in consideration of the agreement of the natural parent to the adoption, and reliance was placed upon this agreement.

Assuming this to be a case of strong natural equity in favor of Ralph Taylor, the absence of any adoption of him by Mrs. Taylor, and the absence of any agreement that she would give him her property in consideration of adoption seem conclusive of this case against the contention of Taylor under the holding of *Starnes* v. *Hatcher*, supra, 121 Tenn. page 335, 117 S. W. page 220, wherein it is said: "That this case is one of strong natural equity cannot be denied. Independent of the contract, the services rendered by the complainants for a long series of years, the tender and affectionate relations existing between the parties, and the continued recognition by Mr. Starnes and his wife of the complainants as their children, establish a strong moral claim in their favor as against the defendants, who, so far as this record shows, have no equity, but, if they take the estate of the deceased at all, do so as a matter of strict law. These considerations, however, while they give emphasis to the claim set up in the bill, would not of themselves be sufficient to warrant the relief which

is sought thereon. *Such relief must be had upon the ground of contract obligation."* (Emphasis supplied.)

█ Subsequent to the aforesaid adoption proceedings and the taking of this child into the home, Mrs. Taylor made the statement to disinterested third persons from time to time that she had adopted Ralph and that he would inherit her property. This was a mere assertion which did not rise to the dignity of a contract. It was not made in consideration of any agreement, and did not result in any action prejudicial to the interest of Ralph Taylor. Such oral random assertions cannot have the effect of a gift or devise of real estate.

If these voluntary assertions made at random to third parties by Mrs. Taylor from time to time could by the stretch of any possible law be regarded as an unperformed contract, Taylor would be entitled to a natural child's right of inheritance as a matter of justice and equity by reason of such assertions only upon a showing that he had faithfully and substantially performed the duties owed by such child by reason of such assertions. This record does not permit a conclusion of such substantial performance upon his part.

Whatever may be an individual's personal inclination because of what may be the lack of equity of those who are the heirs at law of Mrs. Taylor, the Court cannot find any law or equity within the law that permits any of the relief which Taylor seeks by reason of the adoption matters under the facts of this case.

Partition bills were filed by both parties in the Chancery Court and all cases were consolidated. The Court of Appeals ordered the case remanded for further proceedings under these partition proceedings. We think that was correct.

The decree of the Court of Appeals will be affirmed and the cause remanded. The costs of the appeal will be divided between petitioner and respondents and a lien fixed for the payment thereof on the proceeds of the sale of the farm in the partition proceedings which were consolidated with the bill in this case. The costs in the Chancery Court will be adjudged there.

All concur.