YOUNG *et ux. v.* SMITH *et al.*

(*Knoxville,* September Term, 1949.)

(May Session, 1950.)

Opinion filed June 23, 1950.

GODDARD & GAMBLE, of Maryville, for appellants.

FRANK L. FLYNN, of Knoxville, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This appeal involves the right of Max H. Young and wife to adopt one James Patrick Smith, a child of tender years. The petitioners brought suit in the county court of Blount County against the father and mother of said child, also the State Department of Public Welfare, alleging that they were awarded the exclusive care and custody of the said child by decree of the Domestic Relations Court of Knox County and prayed that a judgment of adoption be entered to the end that he bear the name of the petitioners and be given the right to inherit from them. The father of the child filed an answer giving his consent to the child's adoption. The mother demurred to the petition upon the ground that petitioners had failed to comply with Chapter 127, Public Acts of 1949, which provides that there can be no legal adoption of a child without the written consent of both parents, that such consent is necessary to give the court jurisdiction of such proceedings.

The trial court sustained the demurrer and thereupon the petitioners prayed and were granted an appeal to this Court. There is but one assignment of error which is that "The County Judge of Blount County erred in sustaining the demurrer and in dismissing the bill."

The petition of Max H. Young, and his wife, Magdalene Young, contains a full and correct history of the life of James Patrick Smith, the circumstances of his abandon-

ment as an infant by his parents, that he was "unwanted by anybody", the separation and divorce of the parents, the decree of the Domestic Relations Court wherein they were awarded his care and custody over the objection of Mrs. Smith, who had remarried one "Abeshaheen", the decree of the Court of Appeals affirming the lower court, the denial of certiorari by this Court, and aver that in the light of these undisputed facts and circumstances the prayer for his adoption should be granted.

In denying certiorari and thus affirming the trial court and Court of Appeals that it was to the best interest of the child that the Youngs have his exclusive care and custody this Court, speaking through MR. JUSTICE BURNETT, said:

"In the early part of 1947, after the holidays, the child had no place to go; so he continued to stay in the home of Mr. and Mrs. Young. The record shows the reputation and character of this young couple are above reproach in every way. They do not drink liquor and never have. They have been active in Church and Sunday School work all their lives. James Patrick is taken to Sunday School by them every Sunday. They love him and he loves them. He is thoroughly adjusted to Mr. and Mrs. Young and their home, and they are adjusted to him. Mrs. Young does not work, but devotes all her time to her home and this child.

"They have an excellent small home with no mortgage against it, and the home is well furnished. It is their desire to keep James Patrick, who is about four years old now, care for him, educate him, love him and treat him as their own child and adopt him if possible, thus giving him a legal claim upon them. Mr. Young holds a responsible position at a salary of $216.00 a month.

"Thus we see that James Patrick Smith, although he has been only two to four years old while living with Mr. and Mrs. Young, has done for himself, by his own personality, what his father and mother would not or could not do for him: he has won for himself a substantial, lovely home where he can be permanently, comfortably, and securely located with good, highly respected, Christian people who will love and care for him; and we do not intend to take that home away from him under the facts here appearing. We are primarily concerned with the welfare of James Patrick and not with the satisfaction of the natural desire of his mother to have his exclusive custody committed to her." *Smith* v. *Smith*, 188 Tenn. 430, 220 S. W. (2d) 627, 628.

There is no question but that this child should remain in the custody of Mr. and Mrs. Young. But this proceeding in no way involves the right of custody. The right of a little child, as to where it shall live and who shall have its care and custody, appeals to the conscience of every court. Somehow the courts of the land have considered their duty toward homeless, unwanted and abandoned children, as a sacred responsibility, because their only hope in life rests within the sound discretion of the tribunal to which they make their appeal.

The Legislature of 1949 in dealing with the question of adoption of children had but one thought in mind in passing the adoption statute, the protection of children from exploitation. But by no stretch of the imagination can it be said that this Act was passed to forestall any proceeding for adoption of James Patrick Smith by Mr. and Mrs. Young. Insofar as they were concerned they had been guilty of no wrong, or even an impropriety which the statute sought to correct. The statute, however, does apply to the case at bar.

Section 2 of the Act provides: "that the Chancery, Domestic Relations, Circuit, County and Probate Courts shall have concurrent jurisdiction to *authorize the adoption of children.*" (Emphasis supplied.) Section 3 is directory and should be adhered to with reasonable strictness. The applicants for adoption are directed or required to set forth in their petition certain important facts relative to the child sought to be adopted and the terms upon which they wish to adopt the said child. Section 4 reads as follows:

"Be it further enacted, That before a minor child is adopted, valid written consent must be given to such adoptions, either

"(1) By both parents (if living), or by the surviving parent, of a legitimate, or legitimated child, or

"(2) By the mother of an illegitimate child, or

"(3) By the legal or natural guardian of the person of said child, if both parents are dead, incapacitated or have abandoned the child and cannot be located, or

"(4) By a licensed or chartered child-placing agency which, either under the laws of this State or pursuant to the orders of a court committing said child to said agency, has authority to place said child and to consent to the adoption of said child, or

"(5) By the Department, or its agents, or by an agency which has legally accepted guardianship and control of the child on valid release and surrender.

"Where the child to be adopted is twelve years of age, or over, the consent of such child shall be given privately in chambers."

Other Sections of the Act relate to administrative duties to be performed by child-welfare agencies and the adoption of children committed to such agencies, also

to the adoption of foundlings or other abandoned children whose parents are unknown, and who have not been assigned to an agency. Much that is required in these Sections is largely directory and is not determinative of the action of the court in deciding the paramount issue, i. e., the best interest of the child.

The only question made on this appeal is that the trial court lacked jurisdiction of the case. The mother insists that since she had not given her written consent to the adoption of the child, as provided in Section 4 of the statute, the court was without jurisdiction to hear the case. It appears that the father had given written consent to the adoption.

■ ■ The trial judge adopted this view of the question. This is a mistaken view of the law. While the Act provides that a "valid written consent must be given to such adoptions . . . by both parents (if living), or by the surviving parent", nevertheless when it conclusively appears that both parents are before the court either voluntarily or by personal service of a valid process, as in the instant case, the court is fully authorized to determine what is for the best interest of the child. The Purpose of Section 4 and Subsections thereto was to give reasonable notice of the proceeding to all parties in interest to appear and show cause, if any, why the child should not be adopted. The refusal of the natural parents to give their consent, or the refusal of a mother of an illegitimate child to consent, or the objection of "a licensed or chartered child-placing agency" to the child's adoption merely raises an issue as to the welfare of the child. When all parties in interest are before the court consent or the lack of consent to the adoption, while jurisdictional, is not determinative of the court's au-

thority.  Consent of the natural parents or the service of valid legal process in the absence thereto involves a matter of procedure, and the requirements of the Act in this regard must be and are strictly construed.

██  Section 7 of the Act provides that upon entry of a final decree ''said decree shall not be subject to attack except for failure to serve any party with process who is legally entitled thereto under the provisions of law.'' We think it was not the intention of the Legislature that the present and future life of a child should be left to the arbitrary will and possible caprice of anybody, be it the natural parent or any child-caring agency.  In *Magevney* v. *Karsch,* 167 Tenn. 32-45, 65 S. W. (2d) 562, 567, 92 A. L. R. 343, the late Chief Justice Green said:

''Our adoption statutes so construed contemplate the usual accompaniments of judicial procedure, in giving a competent court, providing notice to adverse parties, a subject of judicial inquiry and a hearing and judgment.  Upon the authorities cited, the judgment rendered should have the benefit of the usual presumptions upholding judgments of courts of general jurisdiction.

''Much is said with respect to the reference to the rule of strict construction, as applicable to our adoption statutes, contained *In re Knott,* supra, [138 Tenn. 349, 197 S. W. 1097].  The first citation by Justice Lansden in that case is *Hockaday* v. *Lynn,* 200 Mo. 456, 98 S. W. 585, 586, 8 L. R. A., N. S., 117, 118 Am. St. Rep. 672, 9 Ann. Cas. 775, which is perhaps the most comprehensive judicial discussion of the adoption of children to be found.  The court therein says:

'' 'Adoption being unknown to the common law and in derogation of it, statutes of adoption have always been

more or less strictly construed as against the adopted child. . . . Strict construction, however, is not extended to the act of adoption itself. That is liberally construed in favor of the child adopted.' "

In all adoption cases the courts have been extremely careful to protect the right of natural parents to the care and custody of their children as against the rights of strangers. In the case of *In re Knott,* 138 Tenn. 349, 197 S. W. 1097, 1098, cited with approval by CHIEF JUSTICE GREEN above, this Court took particular pains to point out that "adoption statutes, in order to be constitutional, must be construed so as to authorize the adoption of a child by strangers only in cases where the natural parents consent to the adoption, or where the proof shows that the child has been abandoned by its natural parents, or that it is manifestly to the interest of the child that it be taken from their custody by some judicial proceeding of which they had notice."

Consent of the natural parents is an important jurisdictional fact because no court would dare disturb the relations existing between a child and its natural parents and commit it to strangers except upon some ground which materially affects its future happiness and welfare,

Where the child, however, has been abandoned by its natural parents, or left with strangers as an unwanted child, or the conduct of the parent toward the child is such that it amounts to a grievous wrong in that the child's health and future well-being is jeopardized, such a parent cannot defeat the child's right of adoption by strangers by a plea of lack of written consent, they having notice and an opportunity to resist the action taken. In a number of jurisdictions consent of the natural parents need not be obtained or notice given them of

proceedings to adopt a child whom they have abandoned. "In many jurisdictions the term 'abandon', as used in a statute relating to adoption, has been construed to mean no more than neglect or refusal to perform the natural and legal obligations of care and support which parents owe to their children. But the view that it means to renounce and foresake entirely has also been taken." 1 R. C. L., page 609. See also 30 L. R. A. and notes cited on page 150.

Upon full consideration of the authorities we sustain the assignments of error and remand the case to the trial court to hear proof and determine the right of the petitioners to adopt the child, James Patrick Smith. The appellees will pay the cost of this appeal.

All concur.