In re ADOPTION OF SANDRA ANNE EDMAN, a Minor.
CHARLES FREDRICK EDMAN and Wife, NANCY ANNE ASHER EDMAN, Appellees, v. DON ROBERT ASHER, Appellant. —348 S. S. (2d) 345.

Western Section. February 28, 1961.

Certiorari Denied by Supreme Court July 26, 1961.

Leo Bearman and Leo Bearman, Jr., and S. Shepherd Tate, Guardian ad Litem, Memphis, for appellant.

Younger & Dann, Memphis, for appellees.

BEJACH, J. This cause involves an appeal by Don Robert Asher by and through his general guardian, Mrs. Ruby M. Asher, and also his guardian ad litem, S. Shepherd Tate, appointed by the Chancellor pursuant to the provisions of Section 36-108, T.C.A. Don Robert Asher had previously been adjudged to be a person of unsound mind, and his mother, Mrs. Ruby M. Asher, had been appointed general guardian for him. He was formerly confined in the Western State Hospital at Bolivar, Tennessee; but since June 6, 1958 he has been discharged as improved. Prior to his confinement in the Western State Hospital, he had been divorced by his wife, Mrs. Nancy Anne Asher, who has since married Charles Frederick Edman. In the divorce case custody of Sandra Anne Edman was granted to Mrs. Nancy Anne Asher, now Nancy Anne Asher Edman, but visitation rights were preserved to the father, Don Robert Asher. In the proceeding here involved, Charles Frederick Edman seeks to adopt his step-daughter, Sandra Anne Edman, who at the time the cause was heard in the lower court was eight years of age. Such adoption was granted by the Chancellor, notwithstanding objection thereto was made by the father of the child, Don Robert Asher, through

his general guardian, his mother, Mrs. Ruby M. Asher, and also through his guardian ad litem, S. Shepherd Tate. Also, even though he is and was legally incapable of doing so, he vigorously voiced his own objection.

Prior to the filing of the instant case, a similar adoption petition had been filed, involving the same parties,—which petition proceeded on the theory that Sandra Anne Asher had been abandoned by her father. That cause, same being number 61179 R. D. in the Chancery Court of Shelby County, Tennessee, was dismissed by the Chancellor. Such dismissal was pleaded as res adjudicata in the instant case, but that plea was disallowed on the ground that said case had been dismissed solely because the charge of abandonment had not been established.

In the instant case, appellant has filed four assignments of error in this court, which are as follows:

## "I

"No consent to adoption having been given by the appellant by his legal guardian or by his guardian ad litem, the court below had no jurisdiction over the case at bar and should have dismissed the case.

## "II

"The court below erred in granting a decree allowing an adoption in the case at bar when there was no showing of consent or of abandonment on the part of all the natural parents.

## "III

"The court below erred in granting a decree allowing an adoption in the case at bar on the sole ground

that it was to the best interest of the child to do so, since there is no such single ground for an adoption in this state unless there is established by petitioners an additional ground of either consent or abandonment on the part of the natural parents.

## "IV

"The evidence in the case at bar shows that it is not to the best interest of the minor child to allow her adoption by appellees; therefore, the finding of the court below was contrary to the weight and preponderance of the evidence."

■ There is no common law right of adoption in Tennessee. In re Knott, 138 Tenn. 349, 197 S. W. 1097; Clements v. Morgan, 201 Tenn. 94, 296 S. W. (2d) 874, 875. It follows, therefore, that, as was said by Mr. Chief Justice Prewitt in Clements v. Morgan, "The adoption of a child is governed by statute and to effect a legal adoption it must be strictly complied with." The statute which controls the instant case is set out in sections 36-101 T.C.A. to 36-137 T.C.A., inclusive. Section 36-101 T.C.A. provides as follows:

"Purpose of chapter—Construction.—The primary purpose of this chapter is to protect children from unnecessary separation from parents who might give them good homes, and loving care, to protect them from adoption by persons unfit to have the responsibility of their care and rearing, and to protect them from interference, long after they have become properly adjusted to their adoptive homes, by natural parents who may have some legal claim because of a defect in the adoption procedure.

"The secondary purpose of this chapter is to protect the natural parents from hurried decisions, made under strain and anxiety, to give up a child, and to protect foster parents from assuming responsibility for a child about whose heredity or mental or physical condition they know nothing, and to prevent later disturbance of their relationship to the child by natural parents whose legal rights have not been fully protected.

"When the interests of a child and those of an adult are in conflict, such conflict should be resolved in favor of the child; and to that end this chapter be liberally construed."

Section 36-106 T.C.A. provides, among its other provisions, as follows:

"Petition—Contents.—Such petition must state:

\* \* \* \* \* \*

"(k) that there has been full compliance with the law in regard to consent to adoption."

■ And section 36-108 T.C.A. provides as follows:

"Parties to proceedings.—Consent required— Service of process.—Except as provided in this chapter and if they are living and have not released all rights to the child and have not consented to adoption as provided in this chapter the parents or surviving parent or guardian of the person of the child must be a party or parties of record to the proceeding and must give written consent to the adoption, which must be filed with the petition. If a parent is incompetent to give consent, then a guardian ad litem shall be appointed for the incompetent parent to give

or withhold consent. If parents be divorced both parents shall have notice of the hearing, either by service of process or by publication.

"In any case where the parents or surviving parent or guardian of the person of the child whose adoption is sought are necessary parties and their address is known, or can by due and diligent search be ascertained, that fact must be made known to the court by proper allegation in the petition or by affidavit and service of process must be made upon such person as provided by law for service of process on residents of the state or by service of process on nonresidents as provided by law.

"If the address of such person cannot be ascertained for the purpose of service of process or service of process cannot be made as hereinbefore provided, that fact must be made known to the court by proper allegation in the petition or by affidavit to the effect that after due and diligent search such person cannot be found for the purpose of service of process. Service of process upon such person may then be made by publication of summons as provided by law.

"When a stepparent petitions to adopt a stepchild, consent to the adoption must be given by the petitioner's spouse who is the natural parent of the child, and this adoption shall not affect the relationship of parent and child between such natural parent and the child."

■ The jurisdictional question here involved was before the Supreme Court in Young v. Smith, 191 Tenn. 25, 31 S. W. (2d) 365, and in In re Matthews, 203 Tenn.

161, 310 S. W. (2d) 185. In Young v. Smith, Mr. Chief Justice Neil, speaking for the Supreme Court, said:

"When all parties in interest are before the court consent or the lack of consent to the adoption, while jurisdictional, is not determinative of the court's authority. Consent of the natural parents or the service of valid legal process in the absence thereto involves a matter of procedure and the requirements of the Act in this regard must be and are strictly construed." Young v. Smith, 191 Tenn. 31-32, 231 S. W. (2d) 368.

In Young v. Smith and in In re Matthews, the parents of the children there sought to be adopted were sui juris. In cases where a parent is incompetent to give consent, however, the statute provides, "then a guardian ad litem shall be appointed for the incompetent parent to give or withhold consent." If the parents are sui juris, it is sufficient if they have been made parties to the suit, and in such case the court may override any failure to give consent. In the case of the parent incompetent to give consent, however, no such substitution of the court's judgment for that of the parent involved is authorized. Where a parent is capable of giving consent and has been notified legally of the adoption proceeding, all requirements of due process of law have been complied with; but where a parent is incapable of giving consent, the requirement that a guardian ad litem be appointed for him or her "to give or withhold consent" becomes vital. We think it is apparent, in that case, that the legislative intent contemplated lack of authority in the court to award adoption where the guardian ad litem had withheld consent.

We do not have to decide in this case whether the appointment of a guardian ad litem was necessary where a legal and general guardian had already been appointed, nor what would be the situation if the general guardian and the guardian ad litem disagreed. Gibson's Suits in Chancery (5th Ed.), section 113, provides:

"Defendants who are minors or of unsound mind are the wards of the court, which must represent them in the procurement of counsel; and in discharging this duty the court should select men learned in the law, and capable of taking care of the interest of their ward; and the person so chosen should, of course, have no interest antagonistic to those of the ward. If the minor, or non compos, has a regular guardian, he must appear and defend by such guardian.

"No step can be taken against a minor, or non compos, until after the appointment of a guardian ad litem; the appointment must not only be made, but it must be accepted. The complainant is not a proper party to nominate a guardian ad litem; but he may move the chancellor, or master, to make an appointment. No appointment can be made until after the minor, or non compos, has been duly brought into court by service of process, or by publication; and he is not in court until the return day."

Section 234 of Gibson's Suits in Chancery (5th Ed.) provides:

"As already shown, minors and persons of unsound mind must be brought into court in the same way as defendants not under disabilities; but as minors, idiots and lunatics cannot bind themselves by

any contract, and, as a consequence, cannot retain counsel, and as they are incapable of making their own defense, the law of the court requires that they should appear by regular guardian, when they have such; and if they have none, it becomes the duty of the court, or of the master, if the court be not in session, to appoint a guardian for them, for the purpose of the particular litigation. This guardian is called a guardian ad litem."

In the instant case, both the general guardian and the guardian ad litem, who at the time he was serving as such in this cause was President of the Memphis and Shelby County Bar Association, withheld consent to the adoption, and, so far as he was capable, the defendant protested vigorously; so the only question is whether or not the withholding of such consent is fatal to the adoption proceeding. We hold that it is. If the Legislature had intended that the mere appointment of a guardian ad litem for an incompetent parent should authorize the court to award adoption, notwithstanding the withholding of consent by the guardian ad litem, the sentence, "If a parent is incompetent to give consent, then a guardian ad litem shall be appointed for the incompetent parent to give or withhold consent", should have read, "If a parent is incompetent to give consent, then a guardian ad litem shall be appointed for the incompetent parent". The addition of the phrase "to give or withhold consent" renders his refusal to give such consent fatal.

The clear intent of the Legislature to so specifically provide in the case of an incompetent parent is further indicated by the language of section 36-110 T.C.A. where the phrase, "parents, parent, or guardian of the person

of the minor'' as used in section 36-108 T.C.A. is also used with reference to abandoned children, but no provision is therein made with reference to a non compos parent. In the case of abandoned children, consent may be impossible to obtain, as where a parent's whereabouts are unknown,—in which case publication for the abandoning parent is sufficient. No provision whatever is made in this section, however, for obtaining jurisdiction by publication, where the abandoning parent is non compos.

The rule of construction here followed is consistent with the general trend of authorities throughout the United States. See 45 A. L. R. (2d) 1383, and cases there cited. The Legislature must be deemed to have intended, as is true in the instant case, that a non compos parent might later have his disabilities removed and then be in a position for himself, to consent or withhold consent,—in which case, if the welfare of the child involved requires it, the court might properly decree adoption without such consent.

Assignments of error I and II are, accordingly, sustained.

■ Even if the court should be held to have had jurisdiction to grant adoption in the face of the withholding of consent by the guardian ad litem, on the ground that the granting of such adoption was for the best interest of the child, we think the court erred in the instant case in granting adoption on that ground. The child here involved, as the natural child of her mother, Mrs. Nancy Anne Edman, with custody granted to the mother in the divorce case, is already in the custody and under the control of the mother, and will, presumably, continue in that situation indefinitely. In that situation,

the stepfather, Charles Frederick Edman, has as much opportunity to care for and support the child without a decree of adoption as he would have if such adoption should be decreed; and, if he wishes to provide for her after his death, he can do so by making a will in her favor which will be just as effective, without adoption, as would be the failure to make a will, if adoption should be granted. Thus, in the case of the natural father, if he recovers and has his disabilities removed, his rights, as natural parent, will remain unimpaired and he can give or withhold consent to adoption in his own right. This, in our opinion, is as it should be, and follows from proper construction of the adoption laws of this state. Such result must have been within the contemplation of the Legislature when it enacted our adoption laws.

For these reasons, assignments of error III and IV are also sustained.

It results that the decree of the Chancellor granting adoption of Sandra Anne Asher to Charles Frederick Edman will be reversed, and this cause will be dismissed.

The costs will be adjudged against petitioners and their surety on the cost bond given in the lower court.

Avery, P. J. (W.S.), and Carney, J., concur.