BANK OF MARYVILLE et al.

*v.*

ROBERT J. TOPPING, et al.

393 S.W.2d 280.

(*Knoxville,* September Term, 1964.)

Opinion filed August 3, 1965.

WILLIAM H. SHIELDS, DAVID BALLARD, Maryville, for Bank of Maryville et al.

EARNEST R. TAYLOR, Morristown, guardian ad litem for petitioners, Jennifer Miller et al.

RALPH H. NOE, JR., Morristown, guardian ad litem for respondents, Robert C. Topping et al.

MR. JUSTICE WHITE delivered the opinion of the court.

The original bill in this cause was filed by the Bank of Maryville, and certain other creditors of Robert J. Topping, against the Executors of the Will of Helen Topping Miller, asserting that said Robert J. Topping had an interest in the residuary estate of the testatrix, and seeking to subject such interest to the payment of their claims against him.

The Executors filed an intervening petition in the original action against all heirs at law of Helen Topping Miller, and against all legatees under her Will, for a construction of the Will, and for a determination as to who should be entitled to the residuary estate.

A Guardian ad Litem, Ralph H. Noe, Jr., Esquire, was appointed to represent and protect the interest of Robert C. Topping, a mentally incompetent brother of the testatrix, and he contends, on behalf of said incompetent, and on behalf of the other brothers and sisters, and the children of deceased siblings, that they are entitled to the residuary estate.

A Guardian ad Litem, Earnest R. Taylor, Esquire, was appointed to represent the three minor children of

Frederick Eugene Miller, deceased. Mr. Taylor contends that these minor children are entitled to such residuary estate, as grandchildren of the testatrix.

It is conceded by both parties, and the chancellor so held, that the residuary clause in the Will of the testatrix was too indefinite and vague to be valid, and, therefore, the residuary estate must be disposed of according to the statute of distribution.

The facts giving rise to the question which we must here decide are as follows:

On February 11, 1917, F. Roger Miller and his wife, Helen Topping Miller, brought into their home a baby boy, causing him to be baptized in the Episcopal Church at Morristown, Tennessee, stating that they were his parents and that the child was born on January 1, 1917. They named the child Frederick Eugene Miller. Thereafter, he was reared in the home of the Millers and he considered the Millers his parents. The formal procedures for adoption, then in existence, were never complied with, nor was there any attempt to do so.

Frederick Eugene Miller died on July 10, 1959. His foster father, F. Roger Miller, had predeceased his foster child. He referred to Frederick Eugene Miller in his Will as his son. Further, all evidence, including the exhibits of numerous newspaper clippings, picture albums, etc., reflect the love and affection usually existing between natural children and parents.

Frederick Eugene Miller married and had three children. The proof shows that the Millers at all times held Frederick out to the public as their son, and considered his children their grandchildren.

Helen Topping Miller, a writer of renown, survived her husband, F. Roger Miller, as well as her foster son, Frederick Eugene Miller. She died leaving a holographic will in which specific bequests were made to Betty Lee Miller, Jennifer Miller, Roger Bert Miller, and Jeffrey Eugene Miller, the wife and grandchildren of Frederick Eugene Miller. After making certain other bequests, she left the balance of her personal property as follows:

> To all of my relatives named and unnamed in this instrument I leave my request that they will divide any personal property not already devised in friendship and amity in respect to my memory.

As stated previously, the chancellor held, and both parties concede, that the residuary clause of the Will of Helen Topping Miller was too indefinite to be given effect and, therefore, the textatrix died intestate as to the residue of her estate.

The chancellor held that the children of Frederick Eugene Miller and his widow, Mrs. Betty Lee Miller, were entitled to receive the residue of the estate of Helen Topping Miller, to the exclusion of the surviving brothers and sisters of the deceased. In discussing whether Frederick Eugene Miller was the legal child of Helen Topping Miller for the purposes of intestate distribution, the chancellor stated:

> The Court is of the opinion that the proof in this case requires that the Court hold that, for the purpose of this case, Frederick Eugene Miller was the legal child of Helen Topping Miller.

> The Court's sense of justice and fairness would be outraged if it felt that the law compelled a finding to the contrary, and the Court takes comfort in the fact

that the decisions of the Tennessee courts not only do not require this Court to hold this *de facto* son to be a stranger-in-law, but in fact require that his status as a legal son be declared, and upheld.

The Court of Appeals in a well reasoned opinion, written by Judge Parrott, and concurred in by his colleagues, reversed the chancellor. We granted certiorari. The rationale of the Court of Appeals is that the Tennessee Adoption Statutes must be strictly construed and substantially complied with, and that not being done in this case, Frederick Eugene Miller was not the legally adopted child of Mr. and Mrs. F. Roger Miller, and, therefore, his off-spring could not take, under our statutes, of intestate distribution.

We think the issue of law to be decided in this case, and the only issue, is whether or not adoption by estoppel is recognized under the laws of Tennessee. If so, the widow and children of Frederick Eugene Miller should take the residue of the estate under our intestate laws of distribution. If not, the case must be remanded to Chancery Court for distribution, excluding these persons.

■■ It is our considered opinion that an adoption by estoppel is not recognized by the courts of Tennessee. Adoption is a creature of statute, and not of the common law, and to create the contemplated relation the defined statutory procedures must be substantially followed. *In Re Knott*, 138 Tenn. 349, 197 S.W. 1097 (1917).

This was made clear in the case of *Couch v. Couch*, 35 Tenn.App. 464, 248 S.W.2d 327 (1952). In that case, complainant sought to establish a right to participate in the estate of his purported adoptive father, whose devisees and legatees were named as defendants. The decedent had

executed a contract wherein he purported to adopt complainant and stated that complainant would inherit from decedent's estate like any other child of his, and the complainant's mother in the contract consented to such adoption, but the decedent died leaving a Will which did not provide for complainant.

■ The Court held that an adoption could not be created under the doctrine of estoppel, as estoppel is available only to protect a right, but never to create one. Further, the Court held that the attempted adoption by contract was ineffectual and that the complainant was not entitled to rights of a pretermitted child.

Petitioners place much emphasis on the case of *Starnes v. Hatcher,* 121 Tenn. 330, 117 S.W. 219 (1908), where the Court granted specific performance of a contract to adopt and to inherit. In that case there was a written contract between the adopting parents and the County Judge who had in his custody the two children to be adopted. By virtue of the agreement, the children were taken into the Starnes home, where they were reared and educated and held out to the general public to be the children of Mr. and Mrs. Starnes. Under the terms of the contract, the children were to have been adopted in a manner authorized by statute then in existence, which was not effectually carried out and which, if it had been, would have resulted in a legal adoption. The Court held that the contract was enforceable and stated:

It is to be observed, however, that the complainants are not claiming the right to be let into the estate of the deceased as adopted children; but they are asking for the enforcement of a contract, placing their right to relief entirely upon the obligation assumed by the de-

ceased in that contract. 121 Tenn. at 345, 117 S.W. at 223.

The Starnes case is distinguished from the Couch case since in the Couch case the executed contract in and of itself purports to create the artificial relation of child and parent, no further proceedings being intended or contemplated. The contract in the Starnes case is executory in nature. However, both of these cases are distinguished from the case at bar, as in the case before us, there is absolutely no contract sought to be enforced, nor is there any record of adoption proceedings.

Petitioners also rely upon the case of *Adcock v. Simon,* 2 Tenn.App. 617 (1926). In that case, however, there was an oral contract with the natural mother and the child's custodian to adopt and to inherit. There was also filed a petition to adopt and a decree of adoption was announced by the court from the bench, but was never recorded on the minutes of the court. Relying upon *Starnes v. Hatcher,* supra, the Court held:

We must, therefore, conclude that there was a written contract to give to this child a status of inheritance, to let her into the estate of the decedent, the party to be charged. 2 Tenn.App. at 622.

We think the case *sub judice* is controlled by the case of *Taylor v. Aulton,* 191 Tenn. 81, 231 S.W.2d 573 (1950). In that case T. H. Taylor and wife, Sally Taylor, filed a petition to adopt Ralph Taylor, who was the son of Mrs. Taylor's sister. The petition for adoption was filed, but the signature of Sally Taylor was omitted from the petition. After Sally Taylor's death, Ralph Taylor filed a complaint alleging that he was the adopted son, or by reason of contract between Sally Taylor and himself, or

by reason of equitable estoppel he should inherit from the estate of Sally Taylor. The proof in this case shows that Sally Taylor had always held Ralph out to be her son and had publicly stated that Ralph Taylor would inherit her property. The Court dismissed this complaint and in the opinion, written by Mr. Justice Tomlinson, said:

The absence of evidence of such an agreement upon the part of Mrs. Taylor makes it impossible to bring this case within the holding of *Starnes v. Hatcher*, 121 Tenn. 330, 117 S.W. 219, and *Adcock v. Simon*, 2 Tenn.App. 617. In each of those cases it was agreed by the proposing adoptive parent to give the child the adoptive parent's property at death or to make him an heir of such adoptive parent in consideration of the agreement of the natural parent to the adoption, and reliance was placed upon this agreement.

Assuming this to be a case of strong natural equity in favor of Ralph Taylor, the absence of any adoption of him by Mrs. Taylor, and the absence of any agreement that she would give him her property in consideration of adoption seem conclusive of this case against the contention of Taylor under the holding of *Starnes v. Hatcher*, supra, * * *. 191 Tenn. at 89, 231 S.W.2d at 576.

■ We have made a thorough examination of the Tennessee cases and statutes dealing with the subject matter in this suit. We have been unable to find a case which permits a child to inherit under facts similar to this case. The law is well settled that before a child may inherit from one who is not his natural parent, there must be a substantial compliance with the adoption statute, or there must be a contract of adoption and inheritance.

*In Re Knott,* supra; *Coonradt v. Sailors,* 186 Tenn. 294, 209 S.W.2d 859, 2 A.L.R.2d 880 (1948); *In Re Edman,* 48 Tenn.App. 375, 348 S.W.2d 345 (1961).

██ In the case before us, there was no attempt to comply with the adoption statutes, nor was there any evidence of a contract to inherit or to adopt. It is our opinion that the action of the Millers for so many years would not constitute evidence of a contract, either expressed or implied. It is proper for this Court to interpret and construe contracts made by parties, but it is improper for us to, in essence, draft a contract for the parties when, in fact, there is no evidence of a contract. *Southern Style Shops v. Mann,* 157 Tenn. 1, 4 S.W.2d 959 (1928); *Dubois v. Gentry,* 182 Tenn. 103, 184 S.W.2d 369 (1945); *Central Drug Store v. Adams,* 184 Tenn. 541, 201 S.W.2d 682 (1947); *Cummins v. McCoy,* 22 Tenn.App. 681, 126 S.W.2d 509 (1939); *McKee v. Continental Ins. Co.,* 191 Tenn. 413, 234 S.W.2d 830, 22 A.L.R.2d 980 (1950); *Turner v. Zager,* 50 Tenn.App. 674, 353 S.W.2d 512 (1962).

We are cognizant of the great amount of love and affection among the Millers, Frederick Eugene Miller, and the petitioners in this case. However, at the same time we must take notice of the immeasurable benefits which the petitioners have already received from the Millers by their association with them, and by reason of their generosity in rearing and educating Frederick Eugene Miller in an atmosphere of love and affection. In addition to this, the Will of Helen Topping Miller contained bequests to each of the petitioners as follows:

To Betty Lee Miller the Sum of Five Thousand Dollars. To Jennifer Miller, Two Thousand Dollars. To

Roger Burke Miller, Two Thousand Dollars. To Jeffrey Eugene Miller, Two Thousand Dollars.

■ In our opinion the assignments of error of the petitioners are without merit as there is no proof of natural birth, adoption, or contract to adopt in the record of this cause. To hold that an adoption or a contract to adopt can be presumed from the evidence in this cause would be unrealistic, and contrary to all the evidence offered in this proceeding.

Therefore, the decision of the Court of Appeals is affirmed in all things at the cost of the petitioners.

BURNETT, CHIEF JUSTICE, and DYER, HOLMES and CHATTIN, JUSTICES, concur.

On Supplemental Petition to Rehear

MR. WHITE JUSTICE.

While we appreciate the zeal and earnestness of counsel in filing the petition to rehear, we find nothing therein which we did not consider in preparing our original opinion. Therefore, the petition to rehear is denied.

■ However, a supplemental petition to rehear, insisting that this case should be remanded to the chancellor for the purpose of fixing and ascertaining fees to be paid the guardians ad litem for services rendered by them in the Appellate Courts, is granted. For this purpose the cause is remanded.